UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF J. G. STRAIT *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY.

January Term, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 13, 1907.

*United States—Domicile—Contractor's Bonds—Action on Bond —State and Federal Courts—Jurisdiction—Cause of Action —Retrospective Statutes—Pleading—Pleas to Jurisdiction— Construction—Constitutional Law—Obligation of Contracts —Vested Rights.*

A plea to the jurisdiction must negative every fact from which jurisdiction may be presumed.

The highest degree of certainty is required in a plea to the jurisdiction, and all defects therein may be reached by general demurrer. *Cunningham* v. *Coldbeck,* 63 Vt. 91, overruled.

A plea to the jurisdiction can derive no *help* from the writ or declaration, unless referred to in such a way as to become a part of the plea; but this is the extent of the rule. The writ or declaration may always be considered against such plea and in aid of the regularity and sufficiency of the proceeding challenged thereby.

A "cause of action" consists of every fact which, if traversed, it is necessary for the plaintiff to prove in order to sustain his action.

Where only a part of the facts constituting a cause of action accrued in this State, our courts have jurisdiction of the cause of action.

Where a declaration counted upon a bond executed to the United States by a Maryland corporation, doing business in Vermont, conditioned that a certain New York corporation, doing business in Vermont, should perform a contract between that corporation and the United States, and pay all persons furnishing materials for the work provided for by said contract, and alleged that a resident of New York furnished such materials at a place in Vermont and that the contractor had not paid therefor, it showed that the courts of Vermont had jurisdiction.

The United States, as a creditor, has no particular domicile but possesses, in contemplation of law, an ubiquity throughout the Union, and hence is domiciled in any state in whose courts it chooses to sue.

The Act of Congress of August 13, 1894, entitled "An Act for the protection of persons furnishing material and labor for the construction of public works," requires contractors for government work to give bonds to the United States, conditioned both for the performance of the contract and for the prompt payment of all persons supplying labor or materials in the prosecution of the work, and provides that such laborers or materialmen, in case of non-payment, "Shall have a right of action" on such bonds, "and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties." *Held* that, in suits on such bonds in the name of the United States for the use and benefit of laborers or materialmen, the United States is not a mere nominal party, but the real plaintiff.

The amendatory act of Congress, approved February 4, 1905, providing that suits on such bonds shall be brought only in the federal courts, is not retrospective, and hence does not preclude an action in a state court, on a bond given prior to the amendatory act, to enforce rights that accrued before the passage of that act.

The "obligation" of a contract is the law that binds the parties to perform their agreement.

The provisions of said federal act of 1894 entered into and formed a part of all the laborers' and materialmen's contracts contemplated thereby, and made prior to said amendatory act of 1905, as if they were expressly referred to and incorporated in the terms of such contracts.

Congress has express power to enact bankruptcy laws directly impairing the obligation of contracts, and it may pass laws in the execution of other powers expressly given, which incidentally have that effect; but other than this, it has no constitutional power to impair or destroy vested rights.

The repeal of statutes by implication, and the implied destruction of vested rights, are alike unfavored in law. Neither is to be admitted unless the implication is so clear as to be equivalent to an explicit declaration.

Vested rights are property, the impairment or deprivation of which is
prohibited the federal government by the fifth amendment of the
Constitution.

A statute should not be construed to act retrospectively, or to affect
contracts made prior to its enactment, unless its language is so
clear as to admit of no other construction.

DEBT on a contractor's bond given in conformity to the Act
of Congress of August 13, 1904. Heard on demurrer to defend-
ant's plea to the jurisdiction at the March Term, 1906, Chitten-
den County, *Miles,* J., presiding. Demurrer sustained. Plea
adjudged insufficient. The defendant excepted. Cause passed
to the Supreme Court before final judgment. The opinion states
the material part of the plea.

*E. M. Horton* for the defendant.

The real plaintiff is the beneficiary, a resident of New York.
The United States is a mere nominal party and, therefore, can
give no jurisdictional rights. *U. S.* v. *Sheridan,* 119 Fed. 236;
*U. S.* v. *Henderlonh,* 102 Fed. 2; *U. S.* v. *Barrett,* 135 Fed. 189.

Jurisdiction of parties is determined by the residence of
the real plaintiff. *Brown* v. *Strode,* 5 Cranch 303; *McNutt* v.
*Bland,* 2 How. 1; *Waldron* v. *Skinner,* 101 U. S. 589; *Ward* v.
*Arredondo,* 1 Paine 410.

The amendatory Act of Congress of February 4, 1905, pro-
vides that suits on bonds of this kind shall be brought "in the
Circuit Court of the United States in the district in which said
contract was to be performed and executed, irrespective of the
amount in controversy in such suit, *and not elsewhere.*" There
is no saving clause in this Act, and hence it applies to all claims
pending at its passage, and controls the jurisdiction of this suit.
*Kille* v. *Iron Works,* 19 Atl. 547; *Richardson* v. *Cook,* 37 Vt.
600; *Murray* v. *Mattison,* 63 Vt. 479.

*Powell & Powell* for the plaintiff.

WATSON, J. This case is here on demurrer to the plea to
the jurisdiction, "that the supposed cause of action, and each
and every of them (if any such have accrued to said plaintiff)

accrued * * * out of the jurisdiction of this court, that is to say, in the State of Maryland, in the State of New York, and in the jurisdiction of the United States Courts, and not in this jurisdiction * * *.'' This plea is dilatory in character and will be considered accordingly. The declaration is not made a part of the plea, hence not before us in that way. It is a well understood principle of pleading that a plea in abatement (and this is analogous to a plea in abatement and governed by the same rules) can derive no help from the writ or declaration, unless referred to in such a way as to make it a part of the plea. But this is the extent of the rule. For other purposes the court may take notice of the writ or declaration, it being the same against which the plea is pleaded. As said by Judge Redfield in *Pearson* v. *French,* 9 Vt. 349, ''No intendment is to be made in favor of a plea in abatement, but every reasonable intendment should be made in favor of the regularity and sufficiency of the proceedings.'' In *Leonard* v. *McArthur,* 52 Vt. 439, the plea was denominated ''a plea in abatement,'' but the matters of fact therein alleged were dehors the record, and the only question raised thereby was held to be one of jurisdiction. In discussing the plea (which was held defective) it is said that for any purpose of a judgment of the court upon the matters set forth in the plea, the writ and declaration are not before the court, they not being recited or referred to in the plea. ''When they will be so treated is indicated in *Barnet* v. *Emery,* 43 Vt. 178, in distinction from the cases in which it is held that a plea in abatement will derive no help from them, unless referred to in such a way as to make them part of the plea.'' Thus showing that what is there said regarding the writ and declaration not being before the court has reference solely to their use in aid of the plea. Moreover, the court there demonstrated the extent of the rule by its application, the writ and declaration not being considered before the court in aid of the plea, but in fact noticed in support of the proceedings: ''The jurisdiction,'' says the court, ''so far as subject-matter and parties apparent on the face of the writ and declaration is concerned, is well enough.''

As showing the rule to be thus limited, the case of *Slayton* v. *The Inhabitants of Chester,* 4 Mass. 478, to which reference was made by the court in *Pearson* v. *French,* is directly in point. There the defendant asked that the writ abate because in service

the copy was not left with the clerk, or with one of the principal inhabitants of the town. In the demurrer to the plea one cause assigned was that it appeared from the return indorsed on the writ that a copy of it was left with one of the principal inhabitants of the town, and that defendants were estopped from denying it. It was objected that the return was no part of the demurrer and that the court could not *ex officio* take notice of it. It was held that the return could be noticed, and the plea was held insufficient.

The declaration is in debt, declaring in two counts on a bond alleged to have been executed and delivered by the defendant, a corporation organized and existing under the laws of the State of Maryland and doing business in this State, to the plaintiff, dated March 24, 1903, whereby the defendant acknowledged itself to be held and firmly bound, jointly and severally with the E. H. Denniston Company, a corporation organized and existing under the laws of the State of New York and doing business in this State, unto the United States of America in the penal sum of fifty thousand dollars, etc. It is alleged in the second count that the bond was subject to the following conditions: "that if the said E. H. Denniston Co. shall well and truly perform all and singular the covenants, conditions, and agreements in a certain contract entered into on the 16th day of March, 1903, between said E. H. Denniston Co. and the United States of America, represented by Capt. T. B. Lamoreaux, constructing quartermaster at Burlington, Vermont, and shall promptly make full payments to all persons supplying it, the said E. H. Denniston Co., labor or materials in the prosecution of the work provided for in said contract, then the said obligation shall be void and of no effect, otherwise to remain in full force and virtue." It is averred that the said E. H. Denniston Co. has not performed its said covenants and agreements but has broken and disregarded the same, for that J. G. Strait and W. R. Strait, of Wolcott in the County of Wayne and State of New York, partners, etc., under the firm name and style of J. G. Strait & Son, "did furnish unto the said E. H. Denniston Co. at Burlington in the County of Chittenden and State of Vermont, divers materials used in the prosecution of the work provided for in said contract entered into on the 16th day of March,

1903, between said E. H. Denniston Co. and the United States of America as aforesaid, by reason of which the said E. H. Denniston Co. owes unto the said J. G. Strait & Son the sum of three thousand dollars," etc.

A "cause of action" consists of every fact which it is necessary for the plaintiff to prove, if traversed, in order to sustain his action. *Read* v. *Brown,* 22 Q. B. Div. 128; *Hutchinson* v. *Ainsworth,* 73 Cal. 455; *Bruil* v. *Northwestern Mut. Relief Ass'n,* 72 Wis. 433. It embraces not only the contract in the case, but the breach of it also. In this case it is something more than the contract entered into by the defendant, it includes the furnishing of the materials by J. G. Strait & Son to E. H. Denniston Co. and the latter's failure to pay for the same. Without these facts being shown no breach of defendant's contract appears and no right of action exists against it. As before seen the second count alleges that the E. H. Denniston Co. was doing business in this State and that these materials were furnished it by J. G. Strait & Son at Burlington. These allegations show a contract made in this State, and one of which our courts have jurisdiction. *Osborne & Woodbury* v. *Shawmut Ins. Co.,* 51 Vt. 278; *Stramburg* v. *Heckman,* Busbee's N. C. Rep. 250.

The plea contains no direct and positive denial of the facts thus alleged. An inferential or argumentative denial is not sufficient. *Sumner* v. *Sumner,* 36 Vt. 105; *Morse* v. *Nash,* 30 Vt. 76. To meet the requirements of good pleading, the plea must negative every fact from which jurisdiction may be presumed. Martin, Civil Procedure, 209; *Diblee* v. *Davison,* 25 Ill. 486. The highest degree of certainty is required in pleas of this character, and all defects may be reached by general demurrer. Gould's Pl. ch. III, sec. 57-59, ch. ix, sec. 12; *Leonard* v. *McArthur,* 52 Vt. 439; *Diblee* v. *Davison,* above cited; *Landon* v. *Roberts,* 20 Vt. 286. In *Cunningham* v. *Caldbeck,* 63 Vt. 91, 20 Atl. 974, it was in effect held that pleas to the jurisdiction are not required to have the same technical strictness as pleas in abatement. Clearly such is not the true doctrine of dilatory pleading, and in this regard that case is overruled.

Since part of the cause of action arose at Burlington in this State, the county court in which this action was brought has jurisdiction of the cause of action. In *Ilderton* v. *Ilderton,*

2 Black. H. 145, in discussing the question of jurisdiction and of laying venue of matters transitory arising in a foreign country, Lord Chief Justice Eyre said: "Of matters arising in a foreign country, pure and unmixed with matters arising in this country, we have no proper original jurisdiction; but of such matters as are merely transitory, and follow the person, we acquire a jurisdiction by the help of that fiction to which I have alluded, and we cannot proceed without it; but if matters arising in a foreign country mix themselves with transactions arising here, or if they become incidents in an action, the cause of which arises here, we have jurisdiction, * * *. In the very infancy of commerce, and in the strictest times, as I collect from a passage in Brooke, Trial, pl. 93, the cognizance of matters arising here, was understood to draw to it the cognizance of all matters arising in a foreign country, which were mixed and connected with it, and in these days we should hardly hesitate to affirm that doctrine." In *Jackson* v. *Spittall,* L. R. 5 C. P. 542, the contract in question was made in the Isle of Man. The breach took place in Manchester, England. There the question of jurisdiction was controlled by statute, but the proper construction of that statute was in question. In deciding this point the court, seeking aid by considering what the law was at the time the statute passed, quoted with approval the law above given laid down by his Lordship in *Ilderton* v. *Ilderton,* with the further statement that there was no trace of any objection ever having been maintained on the ground that in a transitory action there was no jurisdiction unless every fact necessary to be proved in order to support the action occurred within the jurisdiction. In *Foot* v. *Edwards,* 3 Blatchf. 310, the action was brought in the Circuit Court of the United States for Connecticut to recover damages for an injury to the plaintiff's mill property, situate in Massachusetts, by the diversion of the stream of water upon which it stood, the act of defendant causing the diversion having been committed in Connecticut. The case stood on demurrer to the declaration. The court, Ingersoll, J., said that when the action is brought in the Federal Court, it must be tried in the state and district where the cause of action arose. It was held that the wrongful diversion of the water in Connecticut, united with the consequent damage which the

plaintiff's mill in Massachusetts sustained, constituted the cause of action; and that, as a part of it essential to the plaintiff's right of recovery took place in Connecticut, without which there would be no good cause of action, the court had jurisdiction.

The same principle obtains at common law where the cause of action includes two or more material things in several counties. Lord Comyns says: "When an action is founded upon two things in different counties, both material to the maintenance of the action, it may be brought in the one county or the other; as if a servant be retained in one county and depart into another, an action lies in the one or the other." Comyns' Dig. Tit. Action, (N 11). The same doctrine is laid down in Bulwer's Case, 7 Co. 1; *Scott* v. *Brest,* 2 T. R. 238; *The Mayor, etc. of London* v. *Cole,* 7 T. R. 583; *Gregson* v. *Heather,* 2 Str. 727; *Barden* v. *Crocker,* 10 Pick. 383.

As far as the jurisdiction of the cause of action is concerned we might rest the case here. But another element of strength is given by considering the domicile of the plaintiff. It is true this suit was brought for the use and benefit of J. G. Strait & Son, yet the United States was the principal party to the contract on which the action is brought, has an interest in the performance of all its provisions, and has the legal right. Hence in actions like this to enforce the specific obligation of the contractor contained in the bond for the protection of those who have furnished labor or materials in the prosecution of the work specified, the controversy is between the government and the contractor in respect of that matter, and the United States is not merely a nominal party, as argued by the defendant, but the real plaintiff. *United States Fidelity & G. Co.* v. *United States,* 204 U. S. 349.

Regarding the United States as a debtor it is held that debts due from the government have no locality at the seat of government, and that the administrator of a creditor of the government, duly appointed in the state where he was domiciled at his death, has full authority to receive payment and give a full discharge of the debts due to his intestate, in any place where the government may choose to pay it; and that moneys so received constitute assets under that administration, to be accounted for and distributed in the same manner as other debts due the intestate in the state of his domicile. In the language

of Mr. Justice Story, "The United States, in its sovereign capacity, has no particular place of domicile, but possesses, in contemplation of law, an ubiquity throughout the Union." *Vaughan* v. *Northup,* 15 Pet. 1, 10 L. ed. 639; *United States* v. *Cox,* 18 How. 100, 15 L. ed. 299; *Wyman* v. *United States,* 109 U. S. 654, 27 L. ed. 1068. We think the United States as a creditor has the same ubiquitous character, and that in contemplation of law in the bringing of this suit it was domiciled in the jurisdiction of the court to which the suit was brought.

This case is distinguishable from that of *Sawyer* v. *North American Life Ins. Co.,* 46 Vt. 697, on which the defendant relies. There both parties to the contract resided out of this State. The contract was not made, nor was it to be performed, in the State. No part of the cause of action on which the suit was brought was within the State. And neither of the parties to the suit was situated or resident here.

The question of jurisdiction of the defendant is not within the plea, hence not considered.

The bond declared upon was given under the provisions of an Act of Congress entitled: "An Act for the protection of persons furnishing materials and labor for the construction of public works," approved August 13, 1894, the same Act under consideration in *United States* v. *The United States Fidelity and Guaranty Co.,* 78 Vt. 445, 63 Atl. 581. It was there held that since Congress had not given the Federal Courts exclusive jurisdiction of actions arising by virtue of that Act, the jurisdiction was not so restricted, and such actions could be tried and determined in the state courts. It is claimed, however, that by the amendatory Act, approved February 24, 1905, the exclusive jurisdiction is given to the Circuit Courts of the United States, without any saving clause, and that thereby the jurisdiction of the state court to hear and determine the matters involved in this case is taken away. In construing the latter statute a consideration of the consequences will be had. This is allowable as a principle of construction when the meaning is doubtful. *State* v. *Franklin Co. Sav. Bk. & Tr. Co.,* 74 Vt. 246, 52 Atl. 1069; *In re Sammon,* 79 Vt. 521, 65 Atl. 577.

The new Act does not deal with practice and procedure only, as did the one under consideration in *Murray* v. *Mattison,* 63 Vt. 479, 21 Atl. 532, cited by defendant, and the one involved

in *Johnson* v. *Smith*, 78 Vt. 145, 62 Atl. 9.   Under the Act of 1894, any person who had furnished labor or materials in the prosecution of the work provided for in the contract with the United States for which payment had not been made, was authorized at any time, either before or after the completion of the work under that contract, to bring suit on the bond in the name of the United States for his use and prosecute the same to final judgment and execution, and thereby receive full payment of his claim to the extinguishment of the amount due on the bond if necessary, without being subject by provisions of the statute to any priority of claim of the government, and without being obliged to pro-rate the judgment with other creditors.   While under the new enactment the creditors must take advantage of its provisions, if at all, in one of two ways: First, as interveners if suit be brought by the United States, in which case their rights are subject to priority of claim of the government, and then if the amount of liability of the surety on the bond is not sufficient to pay in full all such creditors they stand on a basis of proportional distribution among themselves.   Secondly, if suit be not brought by the government within six months from the completion and final settlement of the contract with it, then within one year after the performance and final settlement thereof one may be instituted on the bond by a creditor or creditors in the name of the United States, in the Circuit Court of the United States in the district in which said contract was to be performed and executed and not elsewhere, for his or their benefit, and prosecuted to final judgment and execution.   Any creditor may file his claim in the suit so brought and be made party thereto within one year from the completion of the work under said contract, and not later.   When the suit is by a creditor or creditors, only one action shall be brought, and if the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor, *pro rata* of the amount of recovery.

The provisions of the law of 1894 entered into and formed a part of defendants' contract, as if they were expressly referred to or incorporated in its terms.   This is so alike as to those provisions which affect its validity, construction, discharge, and enforcement.   *King* v. *Cochran*, 76 Vt. 141, 56 Atl. 667;.

*F. R. Patch Mfg. Co.* v. *Capeless,* 79 Vt. 1, 63 Atl. 938; *United States* v. *Quincy,* 4 Wall. 535, 18 L. ed. 403; *Walker* v. *Whitehead,* 16 Wall. 314, 21 L. ed. 357.

Thus whether a person who has furnished labor or materials intervenes in an action brought by the government, or institutes proceedings himself, under the amendatory Act, the remedy is less adequate and efficacious than that afforded by the provisions of the former law. In addition thereto, if necessary for such person to prosecute the action he is obliged to await the expiration of a specified time before commencing it and is allowed a period of six months thereafter in which to do so. The former Act contains no provision of this nature. Prior to the new enactment the plaintiff acquired vested rights in defendants' contract and in the means of enforcing it according to the statute which entered into and became a part of it. Clearly if the new Act is retrospective it is an impairment of substantial rights secured by that contract. In *Walker* v. *Whitehead,* before cited, in discussing the constitutional prohibition upon the states, the court, speaking through Mr. Justice Swayne, said: ''Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment. The obligation of a contract 'is the law which binds the parties to perform their agreement.' Any impairment of the obligation of a contract, the degree of impairment is immaterial, is within the prohibition of the Constitution. The states may change the remedy, provided no substantial right secured by the contract is impaired. Whenever such a result is produced by the Act in question, to that extent it is void. The states are no more permitted to impair the efficacy of a contract in this way than to attack its validity in any other manner, * * *. It must be left with the same force and effect, including the substantial means of enforcement which existed when it was made.''

That case was brought in the state court of Georgia to recover on a certain promissory note. Subsequent to the giving of the note, a statute, retrospective in character, was passed providing that in suits founded on any debt or contract made before an earlier date named, it should not be lawful for the plaintiff to have a verdict or judgment un-

less it be made to appear that the debt had been regularly given for taxes, and that all legal taxes chargeable by law upon the same had been paid for each year after the making of the debt or contract. It was held to be a clear case of law impairing the obligation of a contract. In *McGahey* v. *State of Virginia,* 135 U. S. 662, 34 L. ed. 304, the question was whether the Acts of the Legislature of that state, which required the production of the bond in order to establish the genuineness of the coupons, and prohibiting expert testimony to prove the coupons, were or were not repugnant to the Federal Constitution. The Court, by Mr. Justice Bradley, said: ''It is well settled by the adjudications of this court, that the obligation of a contract is impaired, in the sense of the Constitution, by any act which prevents its enforcement, or which materially abridges the remedy for enforcing it, which existed at the time it was contracted, and does not supply an alternative remedy equally adequate and efficacious.'' It was held that the requirement of the production of the bonds for the purpose named was unconstitutional; so also the prohibition of expert testimony to establish the genuineness of the coupons, as it took from the holder of such instruments the only feasible means in his power to establish their validity. See also *Poindexter* v. *Greenhow,* 114 U. S. 270, 29 L. ed. 185; *Edwards* v. *Kearzey,* 96 U. S. 595, 24 L. ed. 793; *Louisiana* v. *Pilsbury,* 105 U. S. 278, 26 L. ed. 1090.

These decisions are controlling that the obligation of the contract in suit was directly impaired by the amendatory Act, if retrospective. But as the express inhibition of the organic law in this respect has reference only to the states, we will consider whether to enact a statute of such character is within the power of Congress.

It has long been established that the government of the United States has no powers which are not expressly or by necessary implication granted to it by the Constitution. *Marbury* v. *Madison,* 1 Cranch 137, 2 L. ed. 60; *Martin* v. *Hunter's Lessee,* 1 Wheat. 305, 4 L. ed. 97. Congress has express power to enact bankrupt laws directly impairing the obligation of contracts; and it may pass laws in the execution of other powers expressly given, which incidentally have that effect. Legal Tender Cases, 12 Wall. 457, 20 L. ed. 287; *Mitchell* v. *Clark,* 110 U. S. 633,

28 L. ed. 279.   Other than this it has no constitutional power to impair or destroy vested rights; for its power to enact laws are limited to such as '' 'shall be necessary and proper to carry into execution' the powers of the government.''   Measures adopted by it which are prohibited by the Constitution, and those passed which are not within the proper attributes of legislative power, are alike opposed to the Constitution and void. Cooley, Const. Lim. 242-245; *McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. ed. 579.

In *Osborn* v. *Nicholson,* 13 Wall. 654, 20 L. ed. 689, the plaintiff declared upon a promissory note made to him by the defendants, dated March 26, 1861, and payable on the 26th day of December following.   A plea was interposed that the note was given in consideration of the conveyance of a negro slave, with a warrant that he was a slave for life; and that on January, 1863, the negro was liberated by the United States government, etc.   The case stood on demurrer to the plea.   It was held that since the contract was good when made, it was enforceable, and that vested rights therein were not disturbed by the adoption of the 13th Amendment of the Constitution of the United States prohibiting the existence of slavery within the Federal dominions.   Thereon the court, speaking through Mr. Justice Swayne, said: ''But without considering at length the several assumptions of the propositions, it is a sufficient answer to say that when the 13th Amendment * * * was adopted, the rights of the plaintiff in this action had become legally and completely vested.   Rights acquired by a deed, will, or contract of marriage, or other contract executed according to statutes subsequently repealed, subsist afterwards, as they were before, in all respects as if the statutes were still in force.   This is a principle of universal jurisprudence.   It is necessary to the repose and welfare of all communities.   A different rule would shake the social fabric to its foundations and let in a flood-tide of intolerable evils.   It would be contrary to 'the general principles of law and reason,' and to one of the most vital ends of government.   *Calder* v. *Bull,* 3 Dall. 388.   The doctrines of the repeal of statutes, and the destruction of vested rights by implication, are alike unfavored in the law.   Neither is to be admitted unless the implication is so clear as to be equivalent to an explicit declaration.   Every doubt should be resolved against

a construction so fraught with mischiefs." In *Farrington* v. *Tennessee,* 95 U. S. 679, 24 L. ed. 558, the same learned justice, again speaking for the Court, declared the doctrine of the sacredness of vested rights to have its root deep in the common law of England. In *Dash* v. *Van Kleeck,* 7 Johns. 477, Chief Justice Kent, discussing the principle, shows it to be ancient alike in the common and in the civil' law, saying: "It is a principle in the English common law, as ancient as the law itself, that a statute, even of its omnipotent Parliament, is not to have a retrospective effect"; and that in the civil law it is laid down "that a lawgiver cannot alter his mind to the prejudice of a vested right." See also *Johnson* v. *Jones,* 44 Ill. 142; *Hubbard* v. *Brainard,* 35 Conn. 563; *People* v. *Morris,* 13 Wend. 325.

Furthermore, vested rights are property, to take away or impair which is prohibited the government by the 5th amendment of the Constitution. *Osborn* v. *Nicholson,* before cited.

In view of these well settled principles of the organic and of the fundamental law, it seems unreasonable to suppose that Congrsss did not intend that the amendatory Act should be construed with reference to them, thereby avoiding the unjust consequences which would follow a retrospective operation. Indeed, the rule is that a statute should not be construed to act retrospectively, or to affect contracts made prior to its enactment, unless its language is so clear as to admit of no other construction. The presumption is that it was intended to act prospectively only. *City Ry. Co.* v. *Citizens' Street R. R. Co.,* 166 U. S. 557, 41 L. ed. 1114; *Southwestern Coal and Improvement Co.* v. *McBride,* 185 U. S. 499, 46 L. ed. 1010. In the latter case the Court, speaking through Mr. Justice White, said: "While in the absence of a constitutional inhibition, the Legislature may give to some of its Acts a retrospective operation, the intention to do so must be clearly expressed or necessarily implied from what is expressed; and assuming the Legislature to possess the power, its act will not be construed to impair or destroy a vested right under a valid contract unless it is so framed as to preclude any other interpretation." In *City of Montpelier* v. *Senter,* 72 Vt. 112, 47 Atl. 392, it is said: "Retro-

7.

spective legislation is not favored, * * * being highly injurious, oppressive, and unjust; and nowhere will retrospective effect be given to a statute unless it appears that it was the intent of the Legislature that it should have such effect. When such effect would impair a right or do a wrong, it will not be given; * * *.'' See also *Hine* v. *Pomeroy,* 39 Vt. 211; *Sturgis* v. *Hull,* 48 Vt. 302.

It does not appear from the amendatory Act that it was intended by Congress to have retrospective force, nor is its language such as to admit of no other construction. We therefore hold the Act not retrospective, and that it did not defeat the jurisdiction of the state court in which this suit was pending.

This holding is strongly inferentially supported by *United States Fidelity & G. Co.* v. *United States,* before cited. That action was originally brought in the Federal Circuit Court upon a similar bond given under the provisions of the same Act of Congress, passed in 1894. The question of original jurisdiction of that court was involved, the amount of damages claimed in the declaration being only five hundred dollars. It was there said that as the Act of 1905 does not refer to cases pending at its passage, the question of jurisdiction depends upon the law as it was when the jurisdiction of the court was invoked in that action.

*Judgment affirmed and cause remanded.*