UNITED STATES OF AMERICA FOR THE USE OF STRAIT & SON *v.*
UNITED STATES FIDELITY & GUARANTY COMPANY.

October Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed February 27, 1909.

*United States—Contractors' Bonds—Liability of Surety—Lum-*
*ber Furnished—Requirements of Specifications—"Mater-*
*ials."*

A person contracting with the United States Government to furnish
materials for the construction of specified buildings according to
plans and specifications made a part of the contract, executed a
bond, as required by Act of Congress of August 13, 1894, binding
himself promptly to pay for all labor and materials furnished him
for the work contemplated by the contract, which provided that
all materials should be subject to inspection of the officer in
charge. *Held* that, to be "material" furnished within the meaning
of the bond, lumber supplied must have been fairly within the ex-
press or implied terms of the principal contract, including the
specifications, and must have been used in the prosecution of the
work contemplated by the contract; and no recovery on the bond
could be had for defective lumber not used because rejected by
the inspector.

The liability of a surety on the bond for lumber of an inferior quality,
which was at first condemned by the inspector but later used in
the work with his consent, either in its original condition or when
milled, is the reasonable value thereof, not exceeding the contract
price, with the right, under P. S. 2689, to have the benefit of any
defence that would be available to the defendant in an action
against the principal on the same obligation.

COVENANT on a contractor's bond given in conformity to
the Act of Congress of August 13, 1894. Formal pleadings
waived, all necessary pleadings treated as filed, and the declara-
tion treated as covering everything for which a recovery could
be had in this action. Trial by Jury at the September Term,
1907, Chittenden County, *Powers,* J., presiding. Verdict or-

dered for the plaintiff for $2,193.11 damages, and costs; and judgment thereon. The defendant excepted. This case has been once before in the Supreme Court; 80 Vt. 84. See also the last preceding case in this volume.

*E. M. Horton* and *J. E. Cushman* for the defendant.

To be entitled to a recovery plaintiff must prove that the lumber in question was furnished the contractor; that it was used in the work contemplated by the contract; and that it met the requirements of the contract, including the specifications. *Hinchley & Co.* v. *James,* 51 Vt. 240; *Hunter* v. *Blanchard,* 18 Ill. 318; *Gaty* v. *Casey,* 15 Ill. 189; *McLagan* v. *Brown,* 11 Ill. 519; *Chapin* v. *Persee, etc., Works,* 30 Conn. 461; *Taggard* v. *Buchmore,* 42 Me. 77; *Simmons* v. *Carrier,* 60 Mo. 581; *Fitzpatrick* v. *Thomas,* 61 Mo. 518; *Rice* v. *Hodge,* 26 Kan. 164; *Bottomly* v. *Rector, etc. Grace Church,* 2 Cal. 90; *Houghton* v. *Blake,* 5 Cal. 240; *Holmes* v. *Richet,* 56 Cal. 307; *Deardorff* v. *Everhartt,* 74 Mo. 37; *U. S.* v. *McIntyre,* 111 Fed. 590; *McGarry* v. *Averill,* 34 Am. St. 120; *Fletcher* v. *Johnson,* 23 Vt. 581; *Bramble* v. *Poultney,* 11 Vt. 208; *Graves* v. *Bulkley,* 25 Kan. 249, 37 Am. Rep. 249; *Park* v. *Ensign,* 71 Pac. Rep. 230; *McConnell* v. *Poor,* 113 Iowa 133, 84 S. W. Rep. 968; *Gilitinan* v. *Strong,* 65 Pa. St. 244.

*Max L. Powell* and *Rufus E. Brown* for the plaintiff.

The surety is bound by the act of its principal in accepting and using the lumber in question. *Wilkins* v. *Stevens,* 8 Vt. 214; *Cram* v. *Watson,* 28 Vt. 22; *Estey* v. *Read,* 29 Vt. 278; *Gilsom* v. *Bingham,* 43 Vt. 410; *Boughton* v. *Standish,* 48 Vt. 594; *Badger* v. *Whitcomb Bros.,* 66 Vt. 128; *Dennis* v. *Houghton,* 55 Vt. 371; *Baldwin* v. *Doubleday,* 59 Vt. 7.

The surety guarantees that the principal will faithfully perform the contract; and in default thereof the surety is primarily liable. *Seaver* v. *Young et al.* 16 Vt. 662; *Bank of Newbury* v. *Richards,* 35 Vt. 281; *Thayer* v. *Viles,* 23 Vt. 934; 16 Cyc. 936.

WATSON, J. This case was before this Court on the pleadings and is reported in 80 Vt. 84. The action is brought upon the same bond as was that of *United States, for the use and*

*benefit of Elias Lyman Coal Co.* v. *United States Fidelity &: Guaranty Co.,* ante p. 94.

Upon the trial it was stipulated that the declaration should be treated as covering everything which could be properly declared upon and recovered in this action, by virtue of the Federal statute, under which the bond was given; and that in turn the defendant might avail itself of any further defence thereto, as if formal pleas had been filed. All other and further pleadings were waived by both parties.

J. G. Strait & Son, the use plaintiffs, seek to recover the balance due for flooring furnished by them to the E. H. Denniston Co., the contractor, the lumber having been delivered to that company at Fort Ethan Allen in this State, while the company was constructing the buildings named in the principal contract with the government, for the performance of which the bond was given. Certified copies of the bond, of the principal contract, and of such parts of the specifications referred to in the contract and made a part thereof as relate to upper flooring for the construction of the bachelor officers' quarters and the two barracks, were admitted in evidence without objection, and are before us as a part of the exceptions.

Subject to exception, the plaintiff introduced evidence tending to show that the flooring in question was shipped by the use plaintiffs to Fort Ethan Allen, that it was accepted by the contractor, and that the latter agreed to pay therefor. The uncontradicted evidence of the defendant tended to show that it was not such flooring as was required by the contract between the government and the contractor; that a large part of it was defective on account of being warped, cracked at the ends, improperly milled and matched, and not being straight grain, rift sawed, and heart faced, and on account of having sap stains, sap streaks, resin and pitch pockets in its face; that very little, if any, of said flooring would meet the requirements of the specifications forming a part of that contract; that 39,226 feet thereof were remilled in Burlington in order to overcome improper milling and matching and in so doing the width of each board was reduced from two and one-half inches to two and one-fourth inches; that the mill charge for remilling was $2.50 per thousand feet, and the transportation of the flooring from Fort Ethan Allen to Burlington for that purpose and back again was $2.00 per thousand feet; that some of the flooring furnished

was condemned by the United States inspector, but later the contractor was allowed by the inspector to select therefrom the best of it and lay the part thus selected in the floors; and some that was condemned was afterwards remilled and used in laying the floors. It was conceded that the contractor at an expense of $241.61 bought elsewhere 5,369 feet of pine flooring to take the place of some of the flooring purchased of the use plaintiffs, which had been rejected. And the evidence tended to show that the contractor sold to one Dumas between four and five thousand feet of the rejected flooring. The uncontradicted evidence further tended to show that in order to use the portion of flooring purchased of the use plaintiffs and laid in the officers' quarters and barracks, before the same was remilled, much labor was required to scrape the boards contiguous thereto, by reason of improper milling, so that the flooring would have an even surface; that the government inspector condemned the first flooring laid, covering an area of less than one hundred square feet, and caused the same to be torn up and removed on account of the defective condition of at least fifty per cent of the boards laid therein; that the condition of the flooring rendered the same defective according to the specifications mentioned in the principal contract, and only about two-fifteenths of the entire flooring furnished by the use plaintiffs would meet the requirements of the specifications. The defendant claimed that in order to entitle the plaintiff to recover it must show that the flooring furnished by the use plaintiffs complied with the requirements of the government's specifications. The court ruled that all the plaintiff need to show was that the lumber in question was furnished to the contractor for the work at Fort Ethan Allen; that whether or not it strictly complied with the requirements of the specifications is not at the use plaintiffs' risk; and that the question of whether or not the lumber furnished conformed to the requirements of the specifications under the government contract is immaterial. To which holdings defendant excepted.

This exception was well taken. The specifications provide: "Upper floors of first and second stories to be laid at completion of other inside work of 7/8 inch T. and G. clear heart face, straight grain, quarter saw, long leaf yellow pine, from the Gulf states, showing 2½ inch space, thoroughly kiln dried,

tightly strained, and blind nailed at joists, and planed off and scraped at finish.   Butt joints of floor to be cut over joists only. A three inch mitered border to be placed around half projecting 3/16 of an inch above the floor.''   Further:

''The contractor shall give his personal superintendence to the work, or have a competent foreman, satisfactory to the officer in charge, on the job at all times, to act for him, and shall furnish all materials, labor, etc., necessary to complete the work according to the true intent and meaning of the drawings and these specifications, of which intent and meaning the officer in charge shall be the interpreter.   No local terms or classifications will be considered in the interpretation of these specifications.''

And by the principal contract, all materials and workmanship shall be subject during the entire progress of the construction of the buildings to the inspection and acceptance or rejection of the officer in charge, or his agent, and any material or work not so accepted shall be replaced by the contractor at its own expense.

The liability of the defendant does not depend wholly upon the fact that the lumber was furnished to the contractor for the work at Fort Ethan Allen, that he accepted it, and agreed to pay for it.   To be within the scope of the bond as ''material'' furnished, the lumber must have been fairly within the express or implied terms of the principal contract including the specifications, and must have been used in the prosecution of the work provided for in that contract.   *United States for the use and benefit of Elias Lyman Coal Co.* v. *United States Fidelity & Guaranty Co.*, 71 Atl. 1106, mentioned above.   Consequently no recovery can be had for the defective lumber rejected by the government inspector and not used in the prosecution of the work.   This, however, does not include that at first condemned but later selected and used by his consent either as it was or by being remilled.   In either case the flooring used being of an inferior quality and but a portion of that shipped by the use plaintiffs to the contractor, the liability of the defendant therefor under the provisions of the bond is measured not by the contract price, but by the reasonable value thereof not exceeding the contract price, with the further right by statute in the defendant as surety to have the benefit of any defence which might be available to its principal in an action brought against it on

the same obligation. P. S. 2689; *Flagg* v. *Locke,* 74 Vt. 320, 52 Atl. 424.

*Judgment reversed and cause remanded.*