[No. 6556.]

THE UNITED STATES OF AMERICA, ETC., v. MCPHEE,
ET AL.

STATUTES—*Construction—Retroactive Effect*—A statute will
not be construed as retrospective in its operation, even where
there is no constitutional prohibition upon such legislation,
unless it is clear that this was the intention of the enactment.
The rule applies, as well where only the remedy is affected, as
where substantive rights are involved—(431).

The act of congress of Feb. 24th, 1905 (33 Stat. par. 1, 811),
has not the effect to take away the action given by the act of
August 13, 1894 (28 Stat. 278), upon the bond of a contractor
for public work, to one who has provided labor or material for
the work. Even conceding the power of congress, the statute
is not susceptible of a construction which will give it retrospec-
tive effect—(432).

*Error to Montrose District Court*—Hon. SPRIGG
SHACKLEFORD, Judge.

Mr. S. S. SHERMAN and Mr. ERNEST MORRIS for
plaintiffs in error.

Messrs. ROGERS, ELLIS & JOHNSON and Mr. PIER-
PONT FULLER for defendant in error Weigele.

Messrs. DINES, DINES & HOLME for other defend-
ants in error.

November 21, 1904, The Taylor-Moore Construc-
tion Company entered into a contract with the United

States to construct the Gunnison tunnel. Pursuant to the requirements of the contract, and in accordance with an act of Congress, approved August 13, 1894—28 U. S. Statutes-at-Large, 278—the construction company, at the time of the execution of the contract, gave a bond to the United States conditioned that it should promptly make payments to all persons supplying labor and materials for and in the prosecution of the work of the construction of the tunnel. This bond was signed by the defendants in error, as sureties.

On or about December 1, 1904, the company entered upon the execution of this contract, and prosecuted work in the construction of the tunnel until about May 26 following, at which time it abandoned its contract, and refused to further proceed therewith, and failed to pay its debts incurred for labor employed and material contracted for and furnished to it in executing its contract. During the period it was engaged in carrying on its work, it employed a large number of laborers in its prosecution, and purchased from divers parties materials and merchandise necessary for carrying on the work, which were used for that purpose. September 11th, 1905, plaintiffs in error, who had furnished materials to the construction company or performed labor therefor in the execution of its contract, and others to whom claims for materials so furnished or labor performed had been assigned, commenced suit in the district court of Montrose county upon the bond given by the construction company to recover the value of such labor and materials.

In so far as necessary to consider, they alleged in their complaint the facts above narrated.

The act of Congress in force at the time the bond was given is as follows, and is entitled:

"An act for the protection of persons furnishing materials and labor for the construction of public works. *Be it enacted by the Senate and House of Rep-*

*resentatives of the United States of America in Congress Assembled:*

That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor and furnishing affidavit to the department under the direction of which said work is being or has been prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of such contract or bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against such contractor and sureties, and to prosecute the same to final judgment and execution: *Provided,* that such action and its prosecution shall involve the United States in no expense."

February 24, 1905, Congress passed the following amendment to that act:

"That the act entitled "An act for the protection of persons furnishing materials and labor for the construction of public works," approved August thirteenth, eighteeen hundred and ninety-four, is hereby amended so as to read as follows: "That hereafter any person or persons entering into a formal contract with the United States for the construction of any public

building or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority and claim of the judgment of the United States. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed *pro rata* among said intervenors. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the department under direction of which said work has been prosecuted, that labor and materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be and are hereby authorized to bring suit in the name of the United States, in the circuit court of the United States, in the district in which said contract

was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his and their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution: *Provided,* that where suit is instituted by any of such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract and not later; and *provided further,* that where a suit is so instituted by a creditor, or by creditors, only one action shall be brought, and any creditor may file his claim in such action and be made a party thereto, within one year from the completion of the work under said contract, and not later.

If the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor *pro rata* of the amount of the recovery. The surety on said bond may pay into court for distribution among said claimants and creditors the full amount of the surety's liability, to-wit: the penalty named in the bond, less any amount which said surety may have had to pay to the United States by reason of the execution of said bond, and upon so doing, the surety will be relieved from further liability: *Provided further,* that in all suits instituted under the provisions of this act, such notice of the pendency of such suits, informing them of their right to intervene, as the court may order, shall be given to all known creditors, and in addition thereto, notice by publication in some newspaper of general circulation, published in the state or town where the contract is being performed for at least three successive weeks, the last publication to be at least three months before the time limited therefor."

To the complaint the defendants who were sureties on the bond, except Weigele, demurred. By these demurrers the jurisdiction of the court over the subject matter of the action and the sufficiency of the complaint were challenged, the contention being, as we understand the record, that by virtue of the amendment of 1905, the action was premature, and could only be maintained in the circuit court of the United States for the district of Colorado. These demurrers were overruled, and the defendants demurring ruled to answer. To their answer, so far as affirmative, a replication was filed.

Later, the defendant Weigele demurred, challenging the jurisdiction of the court over the subject matter of the action on the grounds above noted, and also raised the question of the sufficiency of the complaint. This demurrer was sustained. Plaintiffs elected to stand by their complaint, and judgment was entered, dismissing their action as to the defendant Weigele. When the cause was called for trial, the action, on motion of the defendants answering, was dismissed for want of jurisdiction. The plaintiffs have brought the case here for review on error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The bond in question was executed under the provisions of the act of 1894, and the only question we are required to determine is, whether the act of 1905 in any manner affects the right of the plaintiffs to resort to the bond. If it does, then it is because the latter act operates retrospectively. In behalf of defendants in error it is contended that the forum and procedure are governed by the amendatory act, and that the action is premature, the contract as yet not having been completed.

Legislative enactments will not be construed as retrospective in their operation, even when permissible, unless it is clear they were intended to do so. This rule ought especially to be adhered to when such a construction will alter the pre-existing situation of parties or will affect or interfere with their antecedent rights. It is founded on the soundest principles of public policy, and its reason is manifest. Every citizen is presumed to know the law, and to enter into business engagements in accordance with its provisions. It would be manifestly unjust, even in cases where a legislative body is empowered to enact laws to some extent retroactive in effect, to take away pre-existing rights, even so far as the remedy only is concerned by judicial construction of a doubtful statute, unless it is clear that such is its purpose.—*Pittinger v. Pittinger*, 28 Colo. 308; *Edelstein v. Carlile*, 33 Colo. 54; *Denver, S. P. & P. Ry. Co. v. Woodward*, 4 Colo. 162; *Harker v. Scudder*, 15 Colo. App. 69; *Jones v. Stockgrowers' Nat'l Bank*, 17 Colo. App. 79; *United States v. Heth*, 3 Cranch 399.

Without expressing an opinion on the power of Congress to pass an act which affected the substantial rights of parties in bonds given under the original act of 1894, it is clear from a comparison of the two acts, if the later is given a retrospective effect, that it works a radical change in the rights of plaintiffs, to their great detriment. Under the act of 1894 the plaintiffs could bring suit in any court of competent jurisdiction upon default of the contractor to pay what it might be owing them for labor performed and materials furnished in executing the contract, and prosecute the same to final judgment and execution. By the amendment, if it applies, suit can only be brought in the first instance by the United States, and plaintiffs would only have the right to intervene and have their claims adjudicated in such action and judgment ren-

dered thereon, subject, however, to the priority and claim of any judgment which might be rendered in favor of the Government upon the bond, that is, they are limited in the relief which may be given them to what is left after the claim of the Government is satisfied. If the United States fails to bring a suit upon the bond, then plaintiffs could only maintain an action in the circuit court of the United States for the district of Colorado, and then only after the expiration of six months from the time of the completion of the contract and final settlement thereon. This might compel them to wait for years before an action could be instituted by them, where, before, they had the right to sue upon the bond, to recover what the contractor was owing them, immediately upon its default. Manifestly, these changes in their rights are so radical and unjust, that the statute should not be given a construction which so alters their rights unless it is clear that it was the purpose of Congress in enacting the amendment to do so.

But the statute is not susceptible of a construction which would bring about such unjust results. Its language is prospective. It provides that "Hereafter any person or persons entering into a formal contract with the United States, etc." Clearly, this applies to the future. The amendment is not confined to procedure, if the limitation as to the forum where such suit can be brought on the bond can be regarded as a matter of procedure, but deals with substantive rights. That is to say, on the bond contemplated by the amendment, the United States is given a preference over all other creditors, and the right of laborers and material men to sue in their own behalf is suspended until after the completion of the contract and final settlement, and for six months thereafter, during which period the United States alone can sue upon the bond. These various provisions are all contained in one section; and if Con-

gress had intended that they should govern the rights of parties in bonds executed under the act of 1894, it is reasonable to conclude that it would have still further amended the original act by providing in plain language that the amendment should apply to such bonds, and not leave it, as it now reads when fairly construed, confined to those executed after the amendment. We think the amendment has no application whatever to the bond, the obligations of which the plaintiffs are seeking to enforce by their action.

This conclusion, in our judgment, is fully supported by *Struthers, Wells & Co. v. United States,* 209 U. S. 306. Counsel for defendants in error contend that this case is distinguishable from the one at bar for the reason it appears that the rights of the plaintiffs in that action had fully accrued prior to the enactment of the amendment of 1905, and that as it does not appear from the complaint in this action that the rights of plaintiffs had attached prior to the date when the amendment took effect, that the case is not in point. What the complaint may disclose in this respect we do not regard as material. The turning point in the case is the date of the execution of the bond. It is true that in the Struthers case it is said: "That Congress did not intend that the amendment should apply to cases where the bond had already been executed, the work done, the respective rights of the parties settled, and the cause of action already in existence."

We do not understand, however, that the amendment was held inapplicable on this state of facts alone. In concluding the opinion it is said:

"Viewing the whole section, we think Congress meant that only in future cases should the provisions of the amendment apply, although some trifling portion of those provisions might be regarded technically as in the nature of procedure. It is, therefore, wiser

to hold the entire section governed by the usual rule, and as applying only to the future."

Certainly, there is no language in the act from which it can be said that it was the intention of Congress to make it retroactive. On the contrary, its language indicates that it is prospective only. To give it a retrospective construction can only be brought about by supplying words or giving it an intendment which its whole purport does not justify, and which would bring about such unjust results that we are satisfied Congress did not intend any such consequences.

Other authorities supporting our conclusion are: *U. S. A., for Strait, v. Fidelity & Guaranty Co.*, 80 Vt. 84; *Burton v. Frank Seifert Plastic Co.*, 61 S. E. 933; *Davidson Bros. Marble Co. v. United States*, 29 Sup. Ct. Rep. 324.

The judgment of the District Court is reversed and the cause remanded for further proceedings in harmony with the views expressed in this opinion.

                                        *Judgment reversed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GARRIGUES concur.