# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

CHESAPEAKE & OHIO RAILWAY CO. v. F. W. STOCK & SONS.

June 15, 1905.

Absent, Cardwell, J.

1. VERDICTS—*Interest.*—This court will not disturb the verdict of a jury allowing interest from November 1, on an admitted loss of freight by a railway company occurring October 18, preceding.

2. ASSUMPSIT—*Declaration—Action for Failure to Deliver Goods.*—A declaration against a common carrier for failure to deliver goods which sets forth the consideration, the promise, and the breach, and that notice in writing was given by the plaintiff to the defendant as prescribed by the bill of lading, is good as a declaration in assumpsit upon an express contract.

3. BILL OF PARTICULARS—*Insufficiency—Harmless Error.*—The ruling of a trial court on the sufficiency of a bill of particulars filed by the plaintiff will not be reversed where it is evident that the defendant was not embarrassed or hindered in any degree in making his defense.

4. EVIDENCE—*Carbon Copies.*—A carbon copy of a paper made by the same impression of type as the original and at the same time (but not a letter press copy) may be regarded as a duplicate original, and may be introduced in evidence without notice to the opposite party to produce the other.

5. EVIDENCE—*Offer of Compromise.*—Admissions not made "without prejudice," or when not plainly shown to have been made as a concession or sacrifice in an effort to buy peace may be given in evidence.

6. COMMON CARRIERS—*Loss of Goods—Damages.*—In case of loss of goods by a common carrier, the measure of damages is the value of the goods at the place of destination, with interest from the time they should have been delivered, less costs of transportation, notwithstanding the bill of lading limits liability to value at place of shipment. The limitation will be disregarded as against public policy.

7. COMMON CARRIERS—*Connecting Carriers—Partners—Agents.*—A connecting carrier cannot, as a rule, be held liable for the default of the initial or other connecting carrier in the absence of a partnership, agency, or

some silmilar relation, and the relationship of the carriers must be averred in the pleadings when it appears that the loss occurred on another line.

8. Pleading—*Bill of Particulars—Declaration.*—A bill of particulars is no part of the declaration and statements contained therein cannot be read into the declaration.

9. Common Carriers—*Connecting Carrier—Liability—How Averred.*—If, in an action against a common carrier to recover for a loss on a connecting line, it be averred in the declaration that the two carriers were joint contractors, and in an amended declaration this averment be omitted and nothing equivalent or akin to it be inserted, and there is a verdict against the defendant, it should be set aside, for without some such averment, or an averment of some kind to fix the liability of the defendant there could be no recovery against it, and it is impossible to tell on what count the jury found their verdict.

10. Common Carriers—*Connecting Carrier—Liability.*—Whether a carrier is liable for the loss of goods by a preceding carrier on the route depends upon whether the carrier assumed or held itself out to the public as assuming such liability. The mere agreement to carry all. freight delivered to it by the preceding carrier at an agreed rate of freight does not render the two carriers jointly liable, nor make them partners.

11. Scintilla Doctrine Disapproved.—The scintilla doctrine heretofore prevailing in this State by which the court was compelled to give an instruction if there was any evidence whatever to support it, although it might be compelled to set aside a verdict rendered in accordance therewith, is not consonant with reason, nor promotive of good results in the administration of justice.

12. Instructions—*Refusing Erroneous Instructions—Duty of the Court.*—If an instruction is right and there is evidence to support it, it should be given. If it be equivocal it should be amended. If it be wrong in form or substance it should be rejected, and there is no obligation on the court to correct it and then give it. A party cannot, by asking an erroneous instruction, devolve upon the court the duty of charging the jury on the law of the case.

Error to a judgment of the Circuit Court of Elizabeth City county in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.                    :

*R. G. Bickford* and *S. O. Bland,* for the plaintiff in error.

*H. G. Avery* and *Gordon Paxton,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Stock and Sons made two shipments of flour from points in the State of Michigan to Phoebus, in the State of Virginia. The first shipment was made in October, 1902, in car No. 5905; the second in February, 1903, in car No. 25578. There was a loss of goods upon each shipment, for which Stock and. Sons brought an action of assumpsit against the Chesapeake and Ohio Railway Company.

The loss claimed upon the goods shipped in car No. 5905, amounting to $612.75, was paid into court, and there is no controversy with respect to it, except as to the allowance of interest from November 1, 1902; the contention of plaintiff in error being that it was entitled to reasonable time after the goods should have been delivered to ascertain if it was liable.

The injury to car No. 5905 occurred on the 18th of October. There is no dispute about the amount or the liability. The money has been paid into court, and even upon the theory of plaintiff in error as to the extent of its liability for interest, that it was entitled to a reasonable time to investigate as to its liability, and that pending such inquiry the amount for which it was found to be responsible should not bear interest, we would not disturb the verdict of the jury, which gives interest from the 1st day of November.

The real contention in the case is in respect to plaintiff in error's liability for loss of the goods shipped in car No. 25578. There seems to be no controversy with respect to the amount of the loss, which was $758, and a settlement was only prevented by disagreement with reference to the allowance of interest. The parties not being able to agree, this suit was instituted, resulting in a verdict for $612.75, with interest from the 1st of November, 1902, and for $758, with interest from March 1, 1903; to be credited by the sum of $612.75, the amount paid into court.

The first assignment of error is to the judgment of the court overruling a demurrer to the declaration.

We are of opinion that the declaration is sufficient.

Speaking of actions in assumpsit, *Hutchinson on Carriers* (2nd Ed.), at section 744, says: "Notwithstanding these essential differences between actions on the case and in assumpsit against the carrier, it seems to have been in former times a very perplexing question how the one form of action should be distinguished from the other. The declarations in the two kinds of actions, according to approved formulas, were so nearly alike that in many cases the astutest judges became perplexed in their efforts to find out to which class the declarations belonged. It seems, however, to be finally settled that while the allegation of a promise in the declaration will not be sufficient to impress upon it the distinctive feature of a declaration upon the contract, because the words 'agreed,' 'undertook,' or even the more significant word, 'promised,' must be treated as no more than inducement to the duty imposed by the common law, yet if there be an averment of a promise and a consideration the declaration will be construed to be upon the contract, and not for the breach of duty. And consequently, when the word 'consideration' was left out, the action was held to be in tort."

The difficulty is doubtless a survival of the time when assumpsit, though founded upon contract, was deemed a species of action on the case, having its origin in a wrong.  *4 Cyc.* 320; *Encyc. Pl. & Pr.,* Vol. 2, p. 988.

The first six counts state a cause of action arising upon an express contract. They set forth the consideration, the promise, the breach, and that notice in writing was given by the plaintiffs to the defendant, as prescribed by the bill of lading. The seventh count is in the usual form of a general count in assumpsit, and is free from objection.

The second assignment of error is to the refusal of the court to require plaintiffs to show in the bill of particulars where the goods and chattels, and cars, in the bill of particulars men‑ tioned, were delivered to the defendant.

It is evident that the plaintiff in error was not embarrassed or hindered in any degree in making its defense by the lack of this statement, and this assignment of error is overruled.

The third, fourth, seventh, and eighth assignments of error are with respect to the notice of the claim of loss. The court permitted a letter to be introduced from Stock & Sons to A. R. Sydnor, dated March 31, 1903, addressed to him as agent of the Chesapeake and Ohio Railway Company at Norfolk, Vir‑ ginia, the receipt of which was acknowledged by Sydnor on April 1, 1903.

The contention of plaintiff in error is, that copies of a letter cannot be admitted in evidence where no notice has been given to produce the original, and no foundation laid for the intro‑ duction of a copy. To this the defendant in error replies that a letter-press copy is not regarded as equivalent to the letter itself, but a carbon copy, which is made at the same time and by the same impression of type with the letter, may well be regarded as a duplicate original with the letter itself. And we think this position is sound.

As was said in *Hubbard* v. *Russell,* 24 Barb. 404, "If two letters are written at the same time to the same person, one being the exact counterpart of the other, one being sent to the person addressed and the other retained by the writer, each is an original, and the one retained may be put in evidence by the party who retained it, without notice to the opposite party to produce the other."

We can find in the record, however, no satisfactory proof that the letter objected to was a carbon copy made at the same time and by the same impression of type with the letter, and therefore to be regarded as a duplicate original of the letter itself.

It is also contended on behalf of the defendant in error that the admission of these letters was at most harmless error, because the stipulation that the carrier shall not be liable for loss or injury unless the claim therefor is presented in writing within a specified number of days after the occurrence of the injury has no application, and is not to be considered in cases where the carrier was of necessity aware of the loss and of its extent, as where there is a complete failure to deliver, or where the injury to the goods was examined by the carrier's agent in person for the purpose of ascertaining its extent (citing 5 *Am. & Eng. Ency.* 324, 6 *Cyc.* 506) ; while in this case both carloads of the damaged flour were sold by the defendant and the proceeds received by it.

As this case must go back for a new trial upon another ground, when the difficulty here presented can doubtless be obviated, we will pass to the next assignment of error.

It seems that W. L. Williams was local counsel of the Chesapeake and Ohio Railway Company at Norfolk; that a suit had been instituted at Norfolk by Stock & Sons against the Chesapeake and Ohio Railway Company, in which suit were involved a car consigned to Norfolk, and also those involved in the present suit.   Mr. Williams testified that he received from the general counsel of the Chesapeake and Ohio Railway Company, after the institution of the suit at Norfolk, three vouchers, with which to make settlement of the alleged claims, and that he offered a sum in settlement of the suit which aggregated the three vouchers.   The contention of the plaintiff in error is, that this offer was made by the railway company to buy its peace, and was made for the Kanawha and Michigan Railway Company. The principle is invoked by the plaintiff in error, that offers made in an effort to compromise threatened or pending litigation are inadmissible in evidence; that a party may with impunity attempt to buy peace; and that the rule is general both in England and the United States that the offer will be·presumed to have been made without prejudice if it was plainly an offer of compromise.   *West* v. *Smith,* 101 U. S. 273, 25 L. Ed. 809.

In *Brown* v. *Shields,* 6 Leigh. 440, speaking of a letter which was admitted by the trial court over the objection that the offer was made by way of compromise, Judge Carr says: "To my apprehension, that letter does not come within the rule of exclusion, according to the authorities cited. There was no treaty for a compromise on foot; the latter asked for none; proposed no meeting, no arbitrators; offered no purchase of peace. Buller says, if the terms 'buy their peace' be attended to, they will resolve all doubts on this head of evidence; and Bayley, J., says, that the 'essence of an offer of compromise is that the party making it is willing to submit to a sacrifice, and to make a concession.' There is no such thing in this letter. The spirit it breathes is wholly different. . . . I do not think that this letter was either written upon a pending treaty for a compromise, or was meant to propose a compromise, or to state terms to which the writer would submit, or sacrifices or concessions which he was willing to make 'to buy his peace.' "

In *1 Greenleaf* (16 Ed.), sec. 192, it is said: "It is to be observed that confidential overtures of pacification, and any other offers or propositions between litigating parties, expressly stated to be made without prejudice, are excluded on grounds of public policy. . . . But if it is an independent admission of a fact merely because it is a fact, it will be received; and even the offer of a sum by way of compromise of a claim tacitly admitted is receivable, unless accompanied with a caution that the offer is confidential."

There was no such caution given in this case, nor can we say that the facts plainly show that the admission was made as a concession or sacrifice, in an effort upon the part of plaintiff in error to buy its peace.

The ninth assignment of error is to the giving of two instructions asked for by defendant in error, the first of which is as follows:

"The court instructs the jury that the measure of damages in

case of loss of goods by a common carrier is the value of the goods at the destination to which he undertook to carry them, with interest on such value from the time when the goods should have been delivered, after deducting the costs of transportation, if this has not been paid."

The objection urged by plaintiff in error to this instruction is that the bill of lading provides that the measure of damages in case of loss or injury is the value of the goods at the place and time of shipment, and not at the point of delivery.

The instruction is taken from *Hutchinson on Carriers* (2nd Ed.), sec. 769, and the rule seems to be a reasonable one.

In the *Southern Pacific Co.* v. *D'Arcais,* 64 S. W. 813, the Texas Court of Civil Appeals held, that "The measure of damages for loss of goods by the negligence of a carrier in transportation is the value of the goods at the place of destination. A stipulation in the contract of shipment, limiting the liability to value at place of shipment, will be disregarded as against public policy, notwithstanding it was an interstate shipment."

In *Mobile Ry. Co.* v. *Jurey,* 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527, the syllabus states, that in an action against a carrier for the loss of goods the measure of damages is the value of the goods in the place where they were to have been delivered, with interest. See also *Railroad Co.* v. *Williams* (Tex. Civ. App.), 31 S. W. 556; *Galveston R. Co.* v. *Ball* (Tex. Sup.), 16 S. W. 441.

Plaintiff's second instruction is as follows:

"The court instructs the jury that even if they believe from the evidence that car No. 25578, involved in this suit, was wrecked before it came upon the rails of the defendant's road, yet if they also believe from the evidence that the defendant was liable and responsible for the transportation of the said car from the point where the same was loaded to Phoebus, Virginia, then they shall find for the plaintiffs."

The goods in controversy were shipped from a point in Michigan over several connecting lines to Gauley, in the State of West Virginia, where they were to be delivered to the Chesapeake and Ohio Railway for carriage to Newport News. The loss occurred by a wreck which took place before the car in which the goods were shipped had reached the point at which it was to be delivered to the plaintiff in error.

"A connecting carrier cannot, as a rule, be held for the default of the initial or of other connecting carriers in the absence of a partnership, express or implied." 4 *Elliott on Railroads,* sec. 1444.

To impose liability upon a connecting carrier for a loss not occurring upon its portion of the through route, there must be some allegation in the pleadings which establishes the relation of principal and agent, or some similar relation, as, for instance, that they were participants in common in the profits of the business. For, a partnership may be formed as well in the business of carriers as in any other, and between corporations engaged in that business as well as between individuals, so as to make them individually and jointly liable. *Hutchinson on Carriers,* sec. 158.

"In suing the last of several connecting carriers for a loss, it is necessary to allege that the carriers were joint contractors, or that the property was delivered to and received by the defendant. If, however, several carriers associate and form a continuous line, and contract to carry goods through for an agreed price, which the shipper pays in one sum, and which the carriers agree to divide among themselves, they are jointly and severally liable for a loss on any part of the line, and the word 'partners,' or any particular word to describe the relation existing between the carriers, need not be used in the petition." 3 *Ency. Pl. & Pr.,* 853.

"The joint arrangement between the connecting lines may be such as to make each the agent for the other in undertaking the continuous transportation of goods." 6 *Cyc.,* 478.

The original declaration in this case charged, that the Chesapeake and Ohio Railway Company was a common carrier of goods and chattels, along with other connecting lines, namely, the Lake Shore & Michigan Southern Railway Company, and Toledo & Ohio Central Railway Company, which latter carrier, with the defendant, form a part of the railway line known as the Kanawha Dispatch, which common carriers aforesaid were joint and several contractors for hire, in and by a certain train of railway cars, from a point in Michigan, to Phoebus, Virginia. But the plaintiffs saw fit to file an amended declaration, in which this allegation does not appear, nor anything which is the equivalent of or akin to it.  In the bill of particulars which the plaintiffs filed it is stated, that wherever the words "joint and several contractors" occur in the original declaration, the same shall, for the purposes of the bill of particulars, be read as "agents one of the other."  But we are confronted with the difficulty, that the bill of particulars is no part of the declaration.

The situation, then, is as follows : The original declaration passed out of the case when the amended declaration was filed ; the amended declaration does not contain any averment of the relations existing between the Chesapeake and Ohio and the connecting carriers essential to impose liability upon it for a loss sustained before the goods were received by it.  The objection would not, indeed, be met if the original declaration is still to be considered as a part of the complaint in the case, for the amended declaration contains seven counts, not one of which makes any reference to the relation under consideration, and there are no means of knowing upon what count the verdict of the jury was founded.

But apart from the question of pleading, which might have to be disregarded, as objection upon this ground was not made in the trial court, it yet remains that the allegation, if to be considered as sufficiently made, is not supported by the proof.

The evidence relied upon by the defendants in error to support the instruction which was given, imposing upon the plaintiff

in error liability for through carriage, consists of the bill of lading, which contains this statement: "Upon all the conditions, whether printed or written, herein contained, it is mutually agreed that the rate of freight from the above named station to destination is to be 15½ cents per 100 lbs., c/o K. D., order F. W. Stock & Sons, notify E. M. Tennis, Phoebus, Va.;" and a letter of E. L. Jamison, introduced by plaintiff in error, which is to the following effect:

"J. F. Orndorff, Esq.,

"A. G. F. A., C. & O. Ry., Richmond, Va.

"Dear Sir:

"East Toledo, O., to Phoebus, K. D. way-bill 27, Feb. 11th, covers C. S. R. car 25578, loaded with 100 barrels of flour and 1600 1/16 sacks of flour, from Hillsdale, Mich., consigned to order F. W. Stock & Sons, notify E. M. Tennis, Phoebus, Va. Unfortunately this shipment was caught in a wreck on our line Feb. 13th, and the flour was transferred into N. Y. P. & O. car 44212.

"Our reports indicate that there was a loss of 32 of the small sacks on account of sacks breaking; also one barrel destroyed; and in addition to this there were about ten barrels with their heads out of one end, allowing some of the flour to fall out. We decided to let this shipment as transferred go forward to final destination. There will, of course, be claim for damages which we will have to stand for, and I give you this information in hopes that you handle the shipment to the best advantage possible.

"I trust that the damage as above indicated will cover it, and that you may be able to make delivery and accept claim for our account for the actual damage. Please advise.

"Yours truly,

"E. L. JAMISON."

In *St. Louis Ins. Co.* v. *St. Louis, &c., R. Co.,* 104 U. S. 146. 26 L. Ed. 679, it is held, that the liability of a railroad com-

pany for the safe carriage of goods after their delivery to the next succeeding carrier on the route, depends upon whether such company, in any form, assumed or held itself out to the public as assuming such liability. The carrier is only bound to carry safely to the end of its line, and there deliver to the next carrier in the route. An arrangement between a dispatch company and sundry railroad companies, whereby the latter, separately, agreed to carry all goods for the transportation of which the former should contract, at the established tariff rates, or at any special rates furnished by the railroad companies, it was held did not involve joint liability upon the part of the railroad companies, or make them partners, either *inter sese* or as to third persons.

Now that case is one where it was sought to hold the initial carrier responsible for a loss occurring after the goods had been delivered by it to a connecting carrier, upon the ground that the Erie & Pacific Dispatch Company, in whose custody the goods were when lost, was the agent of the defendant company.

The evidence relied upon in this case does not, we think, go further in the direction of establishing an agency among the constituents composing the Kanawha Dispatch than that held to be insufficient in the case just cited. We think that the evidence, as it now stands, is too meagre to justify the instruction given.

It is true that what is known as the scintilla doctrine, has heretofore prevailed in this State, by force of which courts have been required to give instructions though the evidence by which they were to be supported was such that a verdict founded upon it could not be maintained. In other words, a trial court might, under what is known as the scintilla doctrine, be reversed for failure to give an instruction which rightly propounded the law, and then be again reversed for sustaining a verdict in obedience to the instruction, because not supported by sufficient evidence. Such a doctrine does not seem consonant with reason, nor promotive of good results in the administration of justice.

The burden, of course, was upon the plaintiffs to make out their case in all its aspects against the defendant, and when it appeared that the loss had occurred before the goods were received by the defendant, the plaintiffs should have shown such relations existing between the road upon which the accident occurred and the plaintiff in error as rendered the latter responsible for the default of the former.

The eleventh assignment of error is a novel one. After the jury had been instructed, plaintiff in error presented the following request to the court:

"The defendant prays the court that should the hypothesis of the facts whereon the several instructions propounded by it be incorrect, or should the said instructions be inartificially or incorrectly expressed, or should the conclusion of law therein announced be incorrectly stated, that the court will so amend the same as to accord with the facts and law of this case, to the end that the jury may be duly instructed on the phases of the case at bar presented by the said instructions."

Which the court refused, and made upon it the following endorsement:

"The court stands by its action on the instructions as noted thereon (both collectively and generally), in view of the multitude of instructions tendered. The court does not propose to make a summary of them, or to write and give to the jury a dissertation of the law of damages. The court is of opinion that the instructions in this case, as in most similar cases, go beyond the province of instructions and only tend to confuse the jury, and possibly cause a reversal in the Supreme Court because of error in giving or refusing instruction which do not instruct."

"To which action of the court in so refusing to conform with the said prayer, and the reading of its refusal in the presence of the jury, the defendant, by counsel, excepted, and prays that this its bill of exceptions, marked 13, may be signed, sealed and made a part of the record in this cause which is accordingly done."

This court has held in numerous cases that a trial court is bound to give any instruction asked for by either party, which correctly expounds the law upon the evidence before the jury. "But if such instruction does not correctly expound the law, the court, as a general rule, may refuse to give it, and is not bound to modify it or give any other instruction in its place. This principle is founded on good reasons and is sustained by much authority. A party cannot, by asking for an erroneous instruction, devolve upon the court the duty of charging the jury on the law of the case. An instruction, as asked for, may be so equivocal, that to give or refuse it might mislead the jury, and thus it might have all the effect of an erroneous instruction. In such a case, it would be proper for the court to modify the instruction so as to make it plain." *Rosenbaums* v. *Weeden, &c.,* 18 Gratt. 799, 98 Am. Dec. 737; *B. & O. R. Co.* v. *Polly, Woods & Co.,* 14 Gratt. 448; *Peshine* v. *Shepperson,* 17 Gratt. 472, 94 Am. Dec. 468.

In *Keen's Ex'or* v. *Monroe,* 75 Va. 428, the court says: "We are of opinion that after refusing to give the instruction which the defendant below proposed to the court to give, upon the ground that it did not rightly propound the law, it was not incumbent on the court, unasked, to instruct the jury as to what was the law. If an instruction asked does not correctly expound the law, the court, as a general rule may refuse to give it, and is not bound to modify it, or give any other instruction in its place unless the instruction asked for is so equivocal that to give or refuse it might mislead the jury; in such case it would be proper for the court to modify the instruction so as to make it plain." *Bertha Zinc Co.* v. *Martin's Admr.,* 93 Va. 791, 22 S. E. 869.

It cannot be doubted that, if the instruction correctly states the law, and there be sufficient evidence to support the verdict, it should be given. It is equally plain that if it does not correctly state the law, it should not be given. The sole question is as to the duty of the court to amend an instruction offered by counsel. The rule as stated in *Rosenbaums* v. *Weeden, supra,* and approved in numer-

ous decisions of this court, is that when an instruction offered is equivocal, so that either to give or refuse it might mislead the jury, the duty is imposed upon the court so to modify it as to make it plain; that if it be right, it should be given; if it be wrong, it should be rejected; if it be equivocal, it should be amended. By what test is a court to measure the duty thus imposed, and how is a jury to be misled by an instruction which the court declines to give? An equivocal instruction of course should not be given, because an equivocal instruction is an inaccurate expression of the law, and for that reason should be refused. To say that a jury may be misled by a refusal to give an instruction, and therefore the instruction should be amended and given, is to prescribe a rule so vague and indefinite as to embarrass rather than to assist trial courts in the performance of their duty. It is the duty of juries to respect the instructions given them. It is not to be supposed that they have any knowledge with respect to those which the court refuses to give; and finally, if it be conceded that the offer of instructions, their discussion, and the judgment of the court upon them, take place in the presence of the jurors, it is an impeachment of their integrity, or of their intelligence, to assume that they were influenced or misled by what has occurred.

But however this may be, we know of no authority, in this court or elsewhere, which imposes upon trial courts the burden sought to be placed upon them by the "prayer" under consideration.

The rule which prevails in other jurisdictions is thus stated in *Blashfield on Instructions to Juries,* sec. 137, and is supported by the great weight of authority: "In order to entitle a party to insist that a requested instruction be given to the jury, such instruction must be correct both in form and substance, and such that the court might give to the jury without modification or omission. If the instruction, as requested, is objection-

able in any respect, its refusal is not error. A party cannot complain that the court did not, of its own motion, modify and correct the request and then give it as corrected. No such duty rests upon the court."

The twelfth assignment of error is to the refusal of the court to set aside the verdict.

As the evidence plainly shows that no damage was sustained by the defendant in error while the goods were in the custody of plaintiff in error, the judgment of the court must, for the reasons herein stated, be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed.*