# Wytheville.

## W. O. & C. G. BURTON AND ANOTHER v. F. A. SEIFERT & CO.

### June 11, 1908.

1. PLEADING—*Demurrer—Question of Fact.*—Whether a sub-contractor has fulfilled all the conditions of his contract with the general contractor so as to entitle him to recover against the general contractor and his sureties on a bond given to the United States Government for the construction of a public building and containing a provision for the protection of sub-contractors, is a matter of fact which cannot be questioned by demurrer.

2. PLEADING—*Declaration in Debt—Sufficiency.*—A declaration in debt on a bond with collateral condition which alleges the obligation sued on, the debt due under the terms of the obligation, and the refusal of the obligors to pay, is sufficient.

3. PLEADING—*Debt on Bond—Oyer of Collateral Contract.*—In an action by a sub-contractor against the general contractor and his surety on a bond given to the United States for the construction of a public building, containing a condition for the benefit of sub-contractors, the defendants are not entitled to oyer of the contract between the general contractor and the sub-contractor as the action is not brought upon that contract.

4. STATUTES—*Repeal—Rights Under Original Act—United States Public Buildings.*—The action of a sub-contractor under the Federal Statute of August 13, 1894, against the general contractor and his surety on a bond given to the United States for the erection of a public building is not abated by the subsequent amendment of that statute pending the action, on February 14, 1905, restricting jurisdiction in such cases to the Circuit Court of the United States. There is no clear intent in the subsequent act to destroy proceedings already commenced, or to take away contract rights under the former statute. Generally, when a law is altered pending an action, the rights of the parties are determined by the law as it stood when the action was begun, unless a different intent is clearly evinced by the new statute.

5. APPEAL AND ERROR—*Depositions—Formal Defects.*—Mere formal objections to depositions, as that they were not properly certified, will

not be considered on appeal when it cannot be seen that any harm was done by their admission in evidence, and there was no objection to the evidence contained in them.

6. EVIDENCE—*Notice to Produce Original of Writing.*—What constitutes reasonable notice to produce an original paper depends on the circumstances of the case. In the case at bar the party notified resided at the place of trial, and the circumstances indicated that the paper was then in court or could be produced without causing inconvenience or delay. The notice, therefore, was sufficient.

7. EVIDENCE—*Original Writings—"Letter Press" Copies.*—A "letter press" copy of a letter, taken out of a book with numbered pages, would seem to stand upon the same footing as a "carbon" copy, and this has been held to be a duplicate original.

8. EVIDENCE—*Usage of Trade—Question for Jury.*—Whether a usage of trade existed at the time a contract was made, and the parties contracted with reference to it, or subsequently made any agreement by which the existence of such usage was recognized, is a legitimate subject of investigation in an action upon such contract if the usage is relied on, and is a question of fact for the jury.

9. APPEAL AND ERROR—*Objection to Admissibility of Evidence—Waiver.*—An exception to the admissibility of evidence will not be considered on appeal where the exceptor subsequently introduced evidence on the same point.

10. BILLS OF EXCEPTION—*Sufficiency—Stating the Evidence.*—A bill of exception to the ruling of the court on the admissibility of evidence is not sufficient, although it gives the question asked the witness and his answer thereto, unless it also contains sufficient of the evidence which has preceded to give this court a clear apprehension of the propriety or impropriety of the ruling of the trial court.

11. EVIDENCE—*Public Building Contract—Report of Inspectors—Public Document.*—Where a public building is erected under a contract with the government providing for inspection by the supervising architect and other inspectors appointed by the government, their reports, when verified, are official public documents and admissible in evidence in an action by a sub-contractor on the building against the general contractor, for the purpose of showing who was responsible for defects in the work for the price of which the sub-contractor is suing.

12. CONTRACTS—*Breach of Plaintiff—Damages.*—A party to a contract cannot prevent its performance and then claim damages for its non-performance.

13. NEW TRIAL—*Erroneous Instruction—Harmless Error.*—A verdict will not be set aside for an inaccurate statement in one instruction if

it can be seen that, when read in connection with other istructions given, the jury could not have been misled by it.

14. USAGE OF TRADE—*Question for Jury.*—It is not error to submit to the jury the question of the existence or non-existence of a local trade usage affecting the rights of the parties to an action where there is evidence tending to prove the existence of such usage.

15. INSTRUCTIONS—*Jury Fully Instructed—Other Instructions.*—Where instructions given clearly and fairly submit to the jury the determination of the facts which the evidence tends to prove, it is not error to refuse other instructions tendered by the parties.

16. FEDERAL STATUTES—*Public Buildings—Contractor's Bond—Sub-Contractors.*—The act of Congress of August 13, 1894, as amended by the act of February 24, 1905, relating to bonds to be given by contractors for public buildings and the condition of said bonds, was intended for the benefit of sub-contractors as well as for persons furnishing labor and materials. The act is to be construed liberally.

17. APPEAL AND ERROR—*Verdicts.*—When a case has been fairly tried upon full evidence and correct instructions, and a verdict has been found which is supported by evidence, and approved by the trial judge, it will not be disturbed by the appellate court.

Error to a judgment of the Circuit Court of the city of Richmond in an action of debt. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following are the instructions given in the court below:

"No 1. The jury are instructed, that the contract price to be paid by defendants to plaintiff, including extra work not disputed, is $53,964, and that this work is admitted to have been done except a part of the railing. The value of this rail (which the jury will ascertain from the evidence), together with the undisputed credits, $48,772.74, must be deducted from said sum of $53,964, and the balance so found is the amount due the plaintiff May 19, 1904, less any other credits which may have been proven by the defendants, and to which they may be entitled under the instructions of the court. But the burden is on the defendant to prove by a preponderance of the evidence any credit claimed which is not admitted by the plaintiff, and

a similar burden is upon the plaintiff to prove any item of its claim not admitted by the defendants.

"No. 2. The jury are instructed, that if they believe from the evidence that the plaintiff performed and executed, in accordance with the specifications, both as to materials and workmanship, the work it contracted for, that said work was accepted by the United States government, and paid for to the defendants W. O. & C. G. Burton, and that the subsequent repairs required by said government upon the said work were not occasioned or caused by any improper materials furnished by the plaintiff, or by any defective execution on its part of the said work, but was occasioned by the failure of W. O. & C. G. Burton to cover with tin certain of the projections on the buildings to be constructed more than 10 inches in width, provided the jury believe the superintendent did not upon submission direct that said projections should not be covered with tin, but should be plastered, and that in so directing the superintendent acted honestly and intelligently, provided the decision was made in writing, or if made orally that the requirement to be in writing was waived, or by the failure to use weatherproof paint, not sufficiently durable to last until the expiration of two months after the close of the St. Louis Exposition, or by an improper application of the paint used, or by any of such acts or failures jointly—then the plaintiff is not to be charged with any cost or expense to which W. O. & C. G. Burton may have been subjected in making said repairs as required by the United States government.

"No. 3. The jury are instructed, that if they believe from the evidence that it was a recognized usage upon the grounds of the St. Louis Exposition in the construction of the buildings thereon for the general contractor to leave the scaffolding, erected by him, exclusive of the foot boards, for the use of his sub-contractor for staff and plaster work, although neither the original nor the sub-contract so provided, and the said Burton was aware of that usage, then the plaintiff is not liable to

W. O. & C. G. Burton for any sum for any such use of such scaffolding.

"No. 4. If the jury believe that during the execution by the plaintiff of the staff or plaster work a dispute arose between the plaintiff and W. O. & C. G. Burton as to whether the latter were obliged to allow the scaffolding erected by them to remain for the use of the plaintiff in the execution of the staff and plaster work, and that W. O. & C. G. Burton, notwithstanding said dispute, allowed the said scaffolding to so remain for the use of the plaintiff, without notifying the plaintiff that it would be charged for such use, or if he notified the plaintiff that he would so charge, but that the plaintiff did not agree thereto, then the plaintiff is not liable to W. O. & C. G. Burton for any sum for any such use of such scaffolding.

"No. 4½. The court instructs the jury, that if they believe from the evidence that Seifert & Co. by a promise express or implied agreed to pay the additional cost of making the scaffolding strong enough for the use of Seifert & Co., and that said scaffolding was so strengthened by W. O. & C. G. Burton, and was used by Seifert & Co., then the jury should allow W. O. & C. G. Burton such a reasonable and proper sum as the evidence shows it cost to make said scaffolding strong enough for the use of said Seifert & Co.

"No. 5. As to the credit claimed by the defendants of $400 for the omission of the balustrade, the burden is upon the defendants to prove by a preponderance of the evidence that this sum was a fair and reasonable deduction from the contract and exceeded $170, as admitted by the plaintiff.

"No. 6. As to the credit claimed by the defendants of $75 for water used by the plaintiff, the burden is upon the defendants to prove by a preponderance of the evidence that the proportionate charge against the plaintiff exceeded $6, as admitted by the plaintiff.

"No. 7. The court instructs the jury, that it was the duty of the Frank A. Seifert Plastic Relief Company, under its contract

with W. O. & C. G. Burton, dated the 4th day of March, 1903, to furnish all labor and material necessary for and to complete all the plastering and plain and ornamental staff work, and all the exterior cement work (excepting foundations for steel trusses) of the United States government buildings, the Louisiana Purchase Exposition, St. Louis, Mo., in strict compliance with the plans and specifications, drawings, and details as prepared by James Knox Taylor, supervising architect, which specifications, drawings, plans, and details were made a part of said contract, and the said Frank A. Seifert Plastic Relief Company agreed that the said plastering should be one rough coat and a finished coat, applied in a first-class and workmanlike manner, and to be of such thickness as would leave all finished surfaces true and to finish flush with staff, and that said plastering when completed would be clean and free from blisters, cracks, or other defects, and that no plastering would be laid in freezing weather, and that the said Frank A. Seifert Plastic Relief Company, under its said contract, guaranteed that the entire staff and plastering work would remain in good condition, showing neither disintegration nor stains for two months after the close of the exposition. And the court further instructs the jury, that if they believe from the evidence that the Frank A. Seifert Plastic Relief Company failed to perform its contract, and as a result of the failure of the Seifert Company to perform its contract a part of said plastering fell off, and it became necessary for W. O. & C. G. Burton to perform a part of said contract occasioned thereby, then the jury should allow said W. O. & C. G. Burton such a reasonable sum as the evidence shows they had to expend because of the failure of the Frank A. Seifert Plastic Relief Company to perform its said contract, unless the said Seifert was prevented from performing his contract as submitted in the second instruction.

"No. 8. The court instructs the jury that if they believe from the evidence that a question of dispute between Seifert & Company and W. O. & C. G. Burton arose as to whether or

not the stylobate roofing and the eight pediment roofs should be plastered and that each matter was submitted to the superintendent and he decided that the stylobate roofing and the pediment roofs should be plastered, then the decision of the superintendent was final provided the decision was made in writing or if made orally that the requirement to be in writing was waived and the jury should not allow Seifert & Company anything for plastering the stylobate and pediment roofs, unless the jury believes from the evidence that the superintendent was guilty of fraud, or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment.

"No. 9. The court instructs the jury, that a general contractor who sublets a part of his contract to a sub-contractor, and pays such sub-contractor in instalments, has an insurable interest in the work done by the sub-contractor and paid for in instalments. And if the jury believe from the evidence that W. O. & C. G. Burton paid the Frank A. Seifert Plastic Relief Company, the sub-contractors, in instalments as the work was performed, and obtained insurance upon the work performed by the Frank A. Seifert Plastic Relief Company, and which had been paid for by W. O. & C. G. Burton, with an agreement and understanding with the Frank A. Seifert Plastic Relief Company that it would pay for such insurance, then the Frank A. Seifert Plastic Relief Company is liable to W. O. & C. G. Burton for any reasonable sum paid by W. O. & C. G. Burton for said insurance, and they have the right to set off the same against the demand of the Frank A. Seifert Plastic Relief Company.

"No. 10. The court instructs the jury, that under the contract between W. O. & C. G. Burton and Seifert & Company that Seifert & Company guaranteed the plastering to remain in good condition, showing neither desintegration nor stains until two months after the close of the exposition, which guarantee is binding upon Seifert & Company, unless the jury believe from the evidence that the defendants failed to furnish

a proper weatherproof paint as required by the specifications and explained in Instruction No. 11 and failed to properly apply the same to said plastering, and that the failure of W. O. & C. G. Burton to furnish said paint and properly apply the same caused said plastering to fall, and the burden is upon Seifert & Company to show by preponderance of evidence that a proper paint was not furnished and was not properly applied.

"No. 11. The court instructs the jury, that W. O. & C. G. Burton were only required under the contract to furnish two good coats of approved weatherproof paint of such a character as to stand for two months after the close of the exposition, and if the jury believe from the evidence that W. O. & C. G. Burton furnished and applied to the plaster and staff work of the government building two good coats of approved weatherproof paint of such a character as to stand for two months after the close of the exposition, then the Seifert Co. cannot complain of the use of said paint.

"No. 12. The court instructs the jury, that under the contract, plans and specifications in this case, W. O. & C. G. Burton were not required to furnish a paint composed of lead and oil and the jury cannot hold W. O. & C. G. Burton responsible for not furnishing a paint containing neither lead or oil, even though the jury may believe that Romalite paint did not contain either ingredient, provided the jury believe from the evidence that W. O. & C. G. Burton furnished a paint as required by Instruction No. 11."

*John A. Lamb* and *Samuel A. Anderson,* for plaintiff in error.

*Meredith & Cocke* and *Stern & Stern,* for defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to the judgment of the Circuit Court of the city of Richmond, in an action of debt, and for con-

venience the plaintiffs in error, W. O. & C. G. Burton, a part-
nership, will be spoken of in this opinion as "the Burtons,"
and the Frank A. Seifert Plastic Relief Company, a corpora-
tion, as "Seifert & Co."

The Burtons being the lowest bidders for the work of con-
structing two United States government buildings at the St.
Louis Purchase Exposition, St. Louis, Mo., obtained a con-
tract, dated November 20, 1902, through H. A. Taylor, acting
secretary of the treasury, to construct said buildings, furnish
the material therefor, etc., as required by the plans and specifi-
cations furnished by the government, the contract price for the
work, etc., being two hundred and sixty-eight thousand, nine
hundred and eighty dollars ($268,980). The Burtons were
required to execute a bond in the penalty of one hundred and
thirty-five thousand dollars, with surety to be approved by
H. A. Taylor, acting secretary, &c.; and accordingly they, on
the 26th day of November, 1902, as principals, and the Vir-
ginia Trust Company, as surety, executed the required bond,
payable to H. A. Taylor, acting secretary of the treasury, act-
ing for and on behalf of the United States government. One
of the conditions of the bond was that the Burtons should
"promptly make payment to all persons supplying them with
labor or materials in the prosecution of the work contemplated
by said contract," which bond was given in pursuance of the
Federal Statute approved August 13, 1894. 28 Stat. 278 (U.
S. Comp. St. 1901, p. 2523).

The buildings which the United States government desired
to construct at the St. Louis exposition were of a temporary
character, and it was only intended that they should last about
eight months. The outsides were composed of plaster, plaster
of paris, and "staff" work, such as is generally used upon
temporary structures, which plaster, staff work, etc., was to
be painted with weatherproof paint.

The Burtons made a contract with Seifert & Co., whereby
Seifert & Co., in consideration of the sum of $53,696, agreed
to furnish the labor and material necessary for and to com-

plete all the plastering, plain and ornamental staff work, and all exterior cement work (excepting foundations for steel trusses) of said United States government buildings, in strict compliance with the plans and specifications, drawings and details, as prepared by Jno. Knox Taylor, supervising architect for the United States government.

One of these buildings—the "fisheries building"—was first completed, and no claim or dispute between the Burtons and Seifert & Co. ever arose over that work. The other work, known as the "government building," was begun about the 1st of October, 1903, and several letters passed between the Burtons and Seifert & Co. as to the delay in and slow progress of the work undertaken by the latter, but these letters, while a part of the history of the transaction, are, so far as they relate to the question of delay, of no importance, as the government made no claim against the Burtons for delay, nor did they make any such claim against Seifert & Co. True, the Burtons on April 19, 1904, wrote Seifert & Co. that some of the plaster had fallen down, but this was remedied, and in the early part of May, 1904, the work was completed, the building accepted by the government, and the Burtons were paid for it the contract price on May 19, 1904.

During the progress of the work, the Burtons made to Seifert & Co. partial payments, amounting to about $48,556, but after many efforts, by correspondence between the parties running from about May 13, 1904, to January 9, 1905, for a settlement, the payment of the balance claimed by Seifert & Co. on the contract price for the work done by the company was refused, and this suit was brought in the name of the United States of America against the Burtons and the Virginia Trust Co., surety, to recover for the use and benefit of Seifert & Co. the balance claimed by the latter ·of the Burtons, the trial of the case resulting in a verdict and judgment in favor of Seifert & Co. for the sum of $4,407, with legal interest thereon from May 19, 1904, until paid.

A number of letters that passed between these parties were introduced in evidence at the trial. The letters of Seifert & Co. merely show efforts to get a settlement, while the Burtons set forth their causes of complaint. In their letters, the Burtons only claimed three specific offsets, viz.: $416.99 for insurance placed on the work; $400 for certain work omitted by order of the government officer; and $75 for water charges; but they also refused to pay because some of the plaster began to fall and the government ordered that it be replaced. The cause of such falling of the plaster was, as Seifert & Co. contended, not from any bad workmanship done or bad material used by it, but because the Burtons painted the plaster with an improper paint, and because they did not place tin on certain places as required by their contract with the government; while the contention of the Burtons was, that Seifert & Co. should restore the plaster, no matter what caused it to fall, under Seifert & Co.'s guarantee as to the plaster. After this suit was brought, however, the Burton's claimed not only the items of offset mentioned, but pleaded an offset of $5,250.99 for furnishing the scaffold used by Seifert & Co. in putting on the plaster and staff work.

At the trial, both sides agreed that Seifert & Co. did some extra work, amounting in the aggregate to $268.99, which was to be added to the original contract price, making a total of $53,964.99; and it was also agreed as to the credits to which the Burtons were entitled for partial payments during the progress of the work.

It is clear from the record and the finding of the jury that they rejected all items for work which Seifert & Co. did not demand when seeking settlement out of court, and allowed the Burtons the three items of credit claimed as to insurance, work omitted by order of the government's officer, and for water bill, but disallowed their claim of $5,250.99, for furnishing the scaffold used by Seifert & Co., and also their claim for credit as to repairs done to the plaster after May 19, 1904, when the government accepted and paid for the building.

We are asked to review and reverse the judgment of the circuit court because of its errors—(1) in overruling the demurrer to the declaration; (2) in rejecting or admitting certain evidence at the trial; (3) in misdirecting the jury by instructions given them; and (4) in refusing to set aside the verdict and award plaintiffs in error a new trial.

The five grounds of demurrer relied on in the circuit court are not specially relied on here, but in the petition for this writ of error it is insisted that the demurrer should have been sustained, for the reason that "the suit must be considered as an action brought to enforce the contract of March 4, 1903, between the Burtons and Seifert & Co., to which contract the Virginia Trust Company was not a party, yet Seifert & Co., in their declaration, made the Virginia Trust Company a party to the suit, claiming as their reason for so doing that the Virginia Trust Company was an obligor along with the Burtons on the bond to the United States government, but in their declaration they failed to set out the contract of March 4, 1903, by which alone the relative rights of the Burtons and Seifert & Co. could be determined, and failed to charge that the Virginia Trust Company, by signing the bond to the United States government, became responsible for the prompt payment for all materials furnished under said contract of March 4, 1903."

To this view of the declaration we cannot add our approval, as a reading of the declaration shows that it made every allegation necessary for a suit on the bond and conformed to every requirement of pleading in an action of debt upon a collateral penal bond. 4 Min. Inst., Pt. 2, pp. 1650-1662.

It does appear from the record that the contract between the Burtons and Seifert & Co. was filed in the clerk's office at the time the declaration was filed, but it was no part of the pleadings, nor intended as such, since the declaration nowhere refers to any such contract. The declaration was plainly upon the bond, and only referred to the contract between the Burtons and the United States government to show how the bond was

given; and Seifert & Co. necessarily had to sue on the bond, and not upon the contract of March 4, 1903, in order to make the Virginia Trust Co. a party, and in order to recover against it. Whether Seifert & Co. had fulfilled all the conditions of that contract was a matter of fact which could not be questioned by demurrer. *Langhorne* v. *Richmond &c. R. Co.,* 91 Va. 309, 22 S. E. 159, and authorities there cited.

The case of *Carroll* v. *Collier,* 22 Gratt. 302, has no bearing here, as the pleadings in that case were very different from the pleadings in this. In that case the suit was upon a special contract, and the opinion of the court, commenting upon the fourth count in the declaration, says that as that count declared upon a special contract, the plaintiff had to set forth such acts as the contract required in order for a liability to arise; while the action here is upon a collateral or penal bond, in which the Burtons were the principals and the Trust Company the surety, and the declaration makes every allegation necessary for a suit upon the bond. In other words, the declaration alleged the obligation sued on, the debt due under the terms of the obligation, and the refusal of the obligors to pay. The action, therefore, was not upon the contract of March 4, 1903, between the Burtons and Seifert & Co., and the ruling of the circuit court denying the right of the Burtons and the Trust Company, their surety upon the bond sued on, to crave oyer of said contract was not error.

Nor was there error in the refusal of the court to dismiss the case on the demurrer, because the Federal statute of August 13, 1894, *supra,* under which the suit was brought, was subsequently amended by a statute approved February 14, 1905. Clearly the suit could not have been brought under the latter statute, as it limits jurisdiction of such a case to the Circuit Court of the United States in the district in which the cause of action arose, and, therefore, unless this statute is to be retroactive in effect, it did not operate to oust the Circuit Court of the city of Richmond of its jurisdiction of this then pending case.

The authorities agree that there is a presumption against retroactive legislation, and words in a statute will not be construed as having such effect unless they clearly have no other effect, and the legislative intent cannot otherwise be satisfied. *U. S.* v. *Amer. Sugar Co.,* 202 U. S. 564, 50 L. Ed. 1149, 26 Sup. Ct. 717; Enlich on Statutes, sec. 282; Potter's Dwaris Stats. 162-3; *Duval* v. *Malone,* 14 Gratt. 24; *Price* v. *Harrison,* 31 Gratt. 114.

Enlich on Stats., *supra,* says: "In general, when the law is altered pending an action, the rights of the parties are decided according to the law as it existed when the action was begun, unless the new statute shows a clear intention to vary such rights."

Sec. 13, U. S. Rev. Stats. 1878, declared: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

When the statute of February 14, 1905, was passed, which it is claimed operated as a repeal of the former statute under which this suit was brought, Seifert & Co. had utilized the consent given in the former statute to sue in the name of the United States, by the institution of this suit, and it is recognized in the decisions of the United States courts, in *U. S. &c.* v. *Nat. Surety Co.,* 92 Fed. 549, and *U. S. &c.* v. *Rundle,* 100 Fed. 400, that this was a contract right.

In the case of *U. S. Fid. &c. Co.* v. *United States &c.* 204 U. S. 349, 51 L. Ed. 516, 27 Sup. Ct. 381, the opinion says: "As the Act of 1905 does not refer to cases pending at its passage, the question of jurisdiction depends upon the law as it was when the jurisdiction of the circuit court was invoked in this action."

We do not, however, deem it necessary to pursue the authorities along this line further, as there is in the later statute under

review, not only no clear intent to destroy proceedings already commenced, or to take away the contract right of Seifert & Co., under the former statute, but this question has been put at rest by the Supreme Court of the United States in the case of *The U. S. Fid. & Guar. Co. v. United States for the use &c. of Struthers Wells Co.,* 209 U. S. 306, 52 L. Ed. —, 28 Sup. Ct. 537, a case directly in point, decided adversely to the contentions of the appellants.

The first bill of exception taken by plaintiffs in error at the trial is to the refusal of the court to sustain an objection to the reading before the jury of certain depositions taken for Seifert & Co.; and the second to rulings of the court in admitting in evidence certain correspondence between Seifert & Co. and the Burtons, some of the letters having been written during the execution of the work done by the former for the latter, but the most of them after its completion, the ground of objection being that they were "letter-press copies" of letters to the Burtons, and "could not be introduced in evidence unless the defendant had been given proper notice to produce the original copies."

With reference to the first exception, we consider it only necessary to say, that the objection not being to the legality of the evidence contained in the depositions offered, but merely because they were not properly certified—a matter of form, which could have been corrected had the objection been made in due time—and not for the reason that the depositions were offered for the first time at the trial, and it cannot be seen that any harm was done the exceptants by admitting the depositions, the exception cannot be sustained.

With reference to the second exception, it may likewise be said that it cannot be seen from the record and the statement of the evidence certified that the ruling excepted to, if erroneous, could have affected the issues before the jury prejudicially to the Burtons or their surety. The objection was that the Burtons had not been "given proper notice to produce the original copies," but when the objection was made Seifert &

Co. called on the Burtons, then in court, to produce the originals, and their only reply was, that the notice was too short. They did not intimate that the originals were not in court—in fact, the reasonable inference from what occurred is that they were, for when one of the "copies" offered by Seifert & Co. was found to be defective, the Burtons produced the original; and there are other facts appearing in the record to bear out the inference that the original letters were in court, or could have been produced by the Burtons without delaying the trial or inconveniencing them, as their (a Richmond partnership) office was in Richmond. We agree with counsel, that the question of what is reasonable notice is a relative one and depends (in the absence of statutory requirement) upon the circumstances of each case.

In the case of *Collins* v. *Collins,* 186 Mass. 507, 71 N. E. 979—very similar to this in many of its features—the opinion says: "As the Deming lease was not a document which the plaintiff would be expected to have in his own possession, and as the bill of exceptions does not state that the plaintiff claimed that he could have produced it if he had received notice so to do, the fact that no notice to produce it had been given did not make the secondary evidence inadmissible."

This court did not, as it seems to be contended by counsel for the Burtons, hold in *Ches. & Ohio Ry. Co.* v. *Stock,* 104 Va. 97, 51 S. E. 161, that a letter-press copy could not be produced in evidence, as that question was not presented in the case, but did hold that a "carbon copy" could. It would be difficult to get away from a common sense view that a "letter-press" copy, taken out of a book with numbered pages, would be as relevant testimony and as admissible in evidence, under proper circumstances, as a "carbon copy," so as to hold upon authority that the carbon copy would be competent and admissible, but the letter-press copy not.

The only case to which we have been referred bearing upon this issue, or that we have been able to find, is *Hubbard* v. *Rus-*

*sell,* 24 Barb. 404, where the two papers, one purporting to be the original and the other a copy, were not pretended to have been made by the same impression of a pen or any instrument; but the court, from the record, considering that they had been made practically at the same time, took the view that the copy was admissible in evidence, thus sustaining the common sense view to which we have adverted.

As has been mentioned, the Burtons pleaded an offset of $5,250.99 for furnishing the scaffold used by Seifert & Co. in doing the work the latter had sub-contracted to do for the former, and Seifert & Co. contested the right to have this offset against them, or any part thereof, allowed, on the ground that at the time this sub-contract was entered into with the Burtons there existed a custom of the general contractors of the St. Louis exposition to leave up their scaffolds for the use of their sub-contractors; and the third bill of exceptions taken at the trial is to the evidence of F. A. Seifert, offered for the purpose of proving the existence of that custom.

That the filing of this offset was an afterthought, too plainly appears from the record to admit of discussion. As already stated, in the correspondence between the parties with reference to a settlement of the balance due Seifert & Co., the Burtons claimed three specific offsets only, making no mention whatever of a claim for the use of the scaffolds, but declined to pay because some of the plaster put up by Seifert & Co. began to fall after the building had been paid for by the government to the Burtons, and the government ordered that it be replaced. This exception was directed only to the testimony of F. A. Seifert, who seems to have conducted the negotiations resulting in the contract for the work to be done by his company, and the only difference between his testimony and that given by W. O. Burton is as to when the talk between them with reference to the custom as to sub-contractors' right to use scaffolds put up by the general contractor occurred, Seifert claiming that it took place before the contract was signed, while Burton said it was

after; and it was for the jury to determine from the evidence whether there was such a custom, and whether the parties con-. tracted with reference to it, or made any agreement, express or implied, after their contract was executed by which the Burtons recognized the existence of the custom and the right of Seifert & Co. to the use of the scaffolds without charge. Moreover, plaintiffs in error, themselves, offered evidence as to this custom, and W. O. Burton admits talking with Seifert about the scaffolds being left up, and that he (Burton) thought from what was said it was customary.

Under these circumstances, there is no merit in this exception. *N. Y. L. Ins. Co.* v. *Taliaferro,* 95 Va. 522, 28 S. E. 879; *So. Ry. Co.* v. *Blandford,* 105 Va. 373, 54 S. E. 1.

Exception No. 4 is of a similar character to the exception we have just considered, and is to the asking of Seifert the following questions: "When you came to sign this contract, did any question arise as to scaffolding, and, if so, what?" and to his answer thereto: "Yes, sir; I mentioned to him (Burton) after reading the contract, that nothing was said about the scaffolding, and I certainly expected him to put it up there."

While the exception sets out the question and answer thereto to which objection was made, it does not in any way bring to the attention of this court the evidence that preceded it, but leaves the court to an examination of the whole of the preceding evidence in order to know whether or not the question and answer were proper. The exception does refer to the evidence set out in bills of exceptions Nos. 1, 2 and 3, and the contract set out in No. 8, but as the admissibility of the evidence objected to depended largely, if not altogether, upon what evidence had preceded it, the exception left this court without a "clear apprehension of the propriety or impropriety of the ruling made by the court," thus violating the rule announced in *Kimball & Fink* v. *Carter,* 95 Va. 77, 27 S. E. 823, 38 L. R. A. 570, and *Holleran* v. *Meisel,* 91 Va. 143, 21 S. E. 658; therefore, it will not be further considered.

Bill of exception No. 5 relates to the ruling of the court admitting in evidence a report of G. B. Strickler, United States government superintendent of the work of construction of the government building at St. Louis, undertaken by the Burtons under a contract containing this provision: "It is further covenanted and agreed by and between the parties hereto, that all materials furnished and work done under this contract shall be subject to the inspection of the supervising architect, the superintendent of the building, and of other inspectors appointed by the said party of the first part, with the right to reject any and all work or material not in accordance with the contract;  *  *  *  "  and the report of Strickler objected to was as to the defective work in the building constructed by the Burtons and its causes, made in the line of his duty; and when verified was to be regarded as an official public document, admissible in evidence under proper circumstances. *So. Ry. Co.* v. *Wilcox,* 99 Va. 407, 39 S. E. 144.

This document refers to and comments upon the report of one C. W. Murdock, who, as United States superintendent of construction, in obedience to proper orders from the supervising architect, had made an examination of the building, and the report of Strickler, returning along with it the report of Murdock to the supervising architect necessarily made the two reports one paper and a public document. They both agreed that the paint used by the Burtons to prevent disintegration of the plaster work on the building was not a proper paint, although the Burtons had guaranteed its lasting quality; and the pleadings in this cause having put in issue, whether Seifert & Co. had not broken its contract with the Burtons by failing to make good a guarantee that the plaster would remain in good condition until the expiration of two months after the exposition closed, clearly Seifert & Co. had the right to meet that issue by showing that the Burtons had prevented the fulfilment of its guarantee by failing in their own guarantee to use a proper paint which would protect the plaster, and to

offer the report of Strickler as tending to prove that the contract of Seifert & Co. had not been broken, and who was in fact responsible for the giving way of the plaster work.

The next bill of exceptions (No. 6) is to the giving, amending and refusing certain instructions; and as the objections to certain amendments to instructions Nos. 7 and 12 are practically the same as the objections to instruction No. 2, given for Seifert & Co., we deem it only necessary in this connection to determine the propriety or impropriety of giving instruction No. 2, which is as follows:

"The jury are instructed, that if they believe from the evidence that the plaintiff performed and executed, in accordance with the specifications, both as to materials and workmanship, the work as contracted for, that said work was accepted by the United States government and paid for to the defendants, W. O. & C. G. Burton, and that the subsequent repairs required by said government upon the said work was not occasioned or caused by any improper materials furnished by the plaintiff or by any defective execution on its part of the said work, but was occasioned by the failure of W. O. & C. G. Burton to cover with tin certain of the projections on the buildings to be constructed, more than 10 inches in width, provided the jury believe the superintendent did not, upon submission, direct that said projections should not be covered with tin, but should be plastered, and that in so directing the superintendent acted honestly and intelligently, provided the decision was made in writing, or, if made orally, that the requirement to be in writing was waived; or by the failure to use weatherproof paint, not sufficiently durable to last until the expiration of two months after the close of the St. Louis exposition, or by an improper application of the paint used, or by any of such acts or failures jointly, then the plaintiff is not to be charged with any cost or expense, to which W. O. & C. G. Burton may have been subjected in making said repairs as required by the United States government."

The objection urged here to this instruction is that even if Seifert & Co. performed and executed the work it contracted for in accordance with the specifications furnished by the government, both as to materials and workmanship, yet if any repairs were afterwards needed, because of any plaster falling, Seifert & Co. were obliged under the contract to repair and restore the same, although such repairs were caused by the Burtons not doing their work as they had contracted and had guaranteed.

To sustain such a contention would be, as counsel for Seifert & Co. were obliged under the contract to repair and self prevent the performance of the contract, and yet claim damages for its non-performance. The contract of the Burtons with the United States government, and also the contract between the Burtons and Seifert & Co., as well as the correspondence between these parties in the effort to agree upon a settlement of their differences, were before the jury, the Burtons making the contention just adverted to, while Seifert & Co. was contending that the falling of the plaster was caused by the Burtons using an improper paint and by not putting tin for the protection of the plaster where their contract with the government required it; and instruction No. 2 plainly and fairly left it to the jury to determine from the whole evidence the question of fact, whether the falling of the plaster, which the Burtons were required to restore, was caused by their own fault or the fault of Seifert & Co. We are, therefore, of opinion that the objection made to the instruction is without merit. *United States* v. *Peck,* 102 U. S. 64, 26 L. Ed. 46; *United States* v. *Behan,* 110 U. S. 338; 28 L. Ed. 168, 4 Sup. Ct. 81; *Lowell* v. *Ins. Co.,* 111 U. S. 264, 28 L. Ed. 423, 4 Sup. Ct. 390; *Anvil Mining Co.* v. *Humble,* 153 U. S. 350, 38 L. Ed. 814, 14 Sup. Ct. 876. In the last named case it is held, that when a contract is not performed, the party who is guilty of the first breach is generally the one upon whom rests all the liability for the non-performance. See also *Weeks* v.

*Little,* 89 N. Y. 566; *Lorillard* v. *Clyde,* 142 N. Y. 463, 37 N. E. 489, 24 L. R. A. 113; *Barton* v. *Gray,* 57 Mich. 622, 636, 24 N. W. 638; 9 Cyc. 701.

We are further of opinion that if instruction No. 1 was inaccurate in the statements it contained, as is contended, the instruction, when read in connection with the other instructions given, could not have misled the jury.

Instruction No. 3, excepted to, submitted to the jury the question whether it was a recognized usage upon the grounds of the St. Louis exposition, in the construction of the buildings thereon, for the general contractor to leave the scaffolding erected by him (exclusive of the foot-boards) for the use of his sub-contractors. As the contract of the Burtons with Seifert & Co. made as a part of it the specifications of the government, which stipulated that the Burtons were to build the scaffold, which "must be safe and suitable for the purpose"; and W. O. Burton had admitted on the witness stand that he promised Seifert that he might use any scaffold he (Burton) might build for his own use; and the evidence proved that the sub-contractor for the painting used the scaffold, and tended to prove that it was generally understood between general contractors and sub-contractors for work on the exposition grounds that scaffolds put up by the general contractor were to be left up for the use of the sub-contractors; in fact, as W. O. Burton admitted, as a witness, that from what passed between him and Seifert, he (Burton) thought it was (customary); we are of opinion that there was no error in the giving of instruction No. 3.

Instruction No. 4 relates also to the custom as to the use of the scaffold by sub-contractors, and the objection thereto is directed to the concluding words; "or if he notified the plaintiff that he would be so charged, but the plaintiff did not agree thereto, then the plaintiff is not liable to W. O. & C. G. Burton for any sum for any such use of such scaffolding."

With reference to this instruction, we deem it only neces-

sary to say that it does not admit of the interpretation put upon it by counsel for the Burtons, and that every possibility, if any, of the instruction having misled the jury was removed by instruction No. 4½, given at the request of the defendants, and by the admission of W. O. Burton, that he agreed that Seifert & Co. might use any scaffold he (Burton) might erect for his own use, but that if he erected a stronger scaffold than he should need, for Seifert's benefit, then Seifert should pay the difference; and that he did not charge Seifert for the scaffold needed for his (Burton's) benefit, but only for extra scaffold.

Instruction No. 4½ is: "The court instructs the jury, that if they believe from the evidence that Seifert & Company, by a promise, express or implied, agreed to pay the additional cost of making the scaffolding strong enough for the use of Seifert & Company, and that said scaffolding was so strengthened by W. O. & C. G. Burton, and was used by Seifert & Company, then the jury should allow W. O. & C. G. Burton such a reasonable and proper sum as the evidence shows it cost to make said scaffolding strong enough for the use of said Seifert & Company."

Bill of exceptions No. 7 but raises the same question considered in connection with instruction No. 2, *supra,* and to discuss the exception would needlessly prolong this opinion, especially as it is conceded that the objections made to certain amendments to the 7th and 12th instructions, complained of in the exception, are without merit, if the giving of instruction No. 2 was proper.

The exception, however, further complains of the refusal of the court to give the prayers of plaintiff in error lettered from A to G, inclusive, but as the instructions given by the court, which will be set out with the official report of the case, in our opinion clearly and fairly submitted to the jury the determination of the facts which the evidence tended to prove, it is unnecessary to consider the complaint of the refusal of said prayers.

The overruling by the court of a motion in arrest of judgment is also assigned as error, which motion was on the ground that the act of Congress of August 13, 1894, as amended by the act of February 24, 1905, did not contemplate an independent sub-contractor such as Seifert & Co., but was intended for the benefit of persons furnishing labor and materials to the general contractors upon their faith and credit; in other words, that the original and amended act of Congress only contemplated that the surety on the general contractor's bond should be liable for the value of the labor and materials furnished the general contractor, and not for profits and gains which an independent sub-contractor might make out of a contract made by him with the general contractor.

With reference to this contention but little more need be said than that its complete refutation is found in the provisions of the act of Congress itself. The bond required by the act obligates "payment to all persons supplying labor and materials in the work contemplated by said contract," and the contract makes the "specifications and proposal" parts of the contract. The specifications contain a sub-division entitled "sub-contractors," in which sub-division is the provision: "No sub-contractor or other person furnishing material to the contractor will be recognized, nor will this department be responsible in any way for claims of such persons beyond taking a bond as required by the act of Congress. It has been held in a number of cases, that the object of the act was to protect those furnishing labor and materials and by giving them assurance of protection to encourage moderate bids—*U. S. for &c.* v. *Nat. Surety Co.,* 92 Fed. 549; *United States &c.* v. *Rundle,* 100 Fed. 400; *United States* v. *American Surety Co.,* 200 U. S. 197, 50 L. Ed. 437, 26 Sup. Ct. 168—and further held that the act must be liberally construed. It would, therefore, be a very narrow and extremely technical view of the act of Congress and of the provisions of the bond it required that would relieve the surety and deny Seifert & Co. in this case the indemnity intended by the act and the bond.

The remaining assignment of error requiring consideration is the refusal of the court to award plaintiffs in error a new trial, on the ground that the verdict of the jury was contrary to the law and the evidence.

By the terms of the contract between the Burtons and Seifert & Co., and the concessions of the former as to extra work, etc., there was due to Seifert & Co. $53,964, less payments and the value of the work omitted, aggregating $48,897.74; so that the balance sued for by Seifert & Co. was $6,495.16. To overcome this balance, the Burtons at the trial presented an offset for $1,225.75, based upon their contention that Seifert & Co. should have repaired the fallen plaster, no matter whose negligence caused it to fall, and, as already stated, pleaded an additional offset of $5,250.99 for furnishing the scaffold used by Seifert & Co.; therefore, the two questions for determination under this assignment of error are, whether or not the jury were right in not allowing either of those claims.

The case having been fairly tried upon full evidence and correct instructions, it is clearly a case in which this court would not be warranted in disturbing the findings of the jury, approved by the learned judge below. The evidence amply justified the jury in not allowing the offset claimed by the Burtons for the expense of replacing and repairing the plastering, which fell either because of the fault of the Burtons themselves in the use of improper paint on the plaster, or in putting it on improperly, or because tin was not put on as a protection to the plaster in certain places, as the contract of the Burtons with the government required. That the offset of $5,250.99, claimed by the Burtons for the use of their scaffold by Seifert & Co., was, as already remarked, an afterthought, plainly appears from the evidence—in fact, from the admissions of W. O. Burton himself; and this fact, considered along with all the other evidence in the case, abundantly sustains the jury in their rejection of that offset.

The judgment of the circuit court is affirmed.

*Affirmed.*