## Davis, Agent v. Williams Brothers Construction Company.

(Decided February 17, 1925.)

### Appeal from Lincoln Circuit Court.

1. Compromise and Settlement—Finding that no Settlement was Made Under Contract for Rental of Equipment Sustained.—In action to recover cost of repairs and rental on leased equipment evidence held to sustain finding that no settlement was made by which plaintiff accepted a certain sum, and defendant's agreement to deliver equipment at any desired point, in full satisfaction of its claim, and agreed to make its own repairs.

2. Bailment—Verdict Not Excessive, where Far Short of Rental up to Time Repairs were Completed.—In action to cover cost of repairs and rental on railroad construction equipment, leased under contract by which stipulated rental was payable until equipment was returned in as good condition as when received, jury's verdict for plaintiff held not excessive or flagrantly against the evidence, where amount found was far short of rental up to time repairs were completed and amount paid for repairs.

3. Evidence—Carbon Copies of Letters Written to Defendant Held Admissible, Without Demand Having Been Made for Originals or Accounting Therefor.—Carbon copies of letters written by plaintiff to defendant's engineer were admissible, without demand for originals, or accounting therefor, where originals were properly mailed to engineer and never returned to plaintiff, and such engineer did not deny having received them, and some of his letters introduced in evidence indicated that they were written in response to plaintiff's letters.

4. Appeal and Error—Admission of Copies of Letters, Without Demand for Production of Originals or Accounting Therefor, Held Harmless.—Admission of carbon copies of letters written by plaintiff to defendant's engineer, without demand for originals or accounting therefor, was harmless, where letters of engineer in reply thereto were as much evidence that plaintiff's version of controversy was correct.

5. Appeal and Error—Instructions Not Prejudicial, Because Long and Somewhat Involved.—That instructions were long and somewhat involved did not render them prejudicial, where they were

drawn practically in conformity with pleadings, and they. fairly presented issues, and those which were long and involved were those submitting appellee's contentions.

K. S. ALCORN, EDWARD COLSTON and MAURICE GALVIN for appellant.

E. V. PURYEAR, SANDERS CLAY and GEO. D. FLORENCE for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

Appellee, William Brothers Construction Company, a corporation, in October, 1918, owned and had in operation in Kentucky certain railroad construction equipment. On October 21, 1918, it submitted to R. W. Jones, district engineer, C., N. O. & T. P. R. R. Co., while under federal control, at Lexington, Kentucky, the following offer to sell or rent the equipment:

> "In compliance with your verbal request of this date, we quote you on the following: One Marion steam shovel, model 61, shop No. 2889; one 47-ton Vulcan locomotive, shop No. 2227; ten 12-yd. Western air dump cars; one Western spreader car; two shanty cars.
> "We will sell the entire above equipment for the sum of $33,500.00 (thirty-three thousand five five hundred dollars), net cash, or we will rent the above equipment for a period of not less than six months for $1,250.00 per month, upon conditions that you maintain and keep it in repair, at your expense, and return same to us in its present like conditions."

The offer to rent the equipment was accepted and it was taken over about November 1st of that year. It was used until and including the month of September, 1919, when notice was given that the equipment was ready to be turned back to appellee. The question as to whether it then was in as good repair as when delivered arose. Much correspondence passed between the parties. The condition of the ten dump cars and the spreader car seems to have been chiefly in controversy. Much delay ensued, but finally the equipment was delivered to William J. Oliver Mfg. Company, Chattanooga, Tennessee, about the middle of January, 1920, where the dump cars and spreader car were repaired, the repairs being completed about May 1, 1920. The parties were unable to

arrive at a settlement of their differences and this litigation ensued. Appellee sued appellant to recover the cost of repairs and to recover rental on the equipment up to the date the repairs were completed. Appellant defended, claiming that in September, 1919, a settlement was made by which, in view of the fact that only a portion of the equipment was being used in that month, and it for only a part of the month, appellee accepted $1,250.00, a full month's rental, in settlement of the amount due it to put the equipment in as good condition as it was when delivered to appellant, and agreed to make its own repairs, with the further understanding that its equipment should be delivered free of transportation cost at any point to which it might desire to have it consigned on the Southern Railway system. Appellee denied having made that or any settlement or agreement. The trial before a jury resulted in a verdict for appellee for $8,000.00, and, appellant's motion and grounds for a new trial having been overruled, it prosecutes this appeal.

There is no question but that the contract by which the equipment was rented by appellee to appellant was made by an acceptance of the proposal quoted above. The rental of $1,250.00 per month was paid for all the time used up to and including the month of September, 1919. There can be no question but that under the contract it was the duty of appellant to keep the equipment in repair and to return it to appellee in as good condition as when received. Neither can there be any doubt but that under the contract appellant would be liable to appellee for rental on the equipment whether in use or not during the time spent in repairing it to put in as good condition as when received. The question as to whether or not in September, 1919, a settlement was made between appellant and appellee by which the latter accepted $1,250.00 and appellant's agreement to deliver the equipment at any point on the Southern Railway system in full satisfaction of its claim for repairs and agreed to make its own repairs at its own expense was submitted to the jury in an instruction which fairly presented that feature of the case. The jury found against appellant. From our reading of the evidence in the case, we do not understand how the jury could have arrived at any other conclusion on that question. Appellant was represented in the transaction by R. W. Jones, district engineer, who seems to have been in charge of the Southern Railway system.

In his testimony, after stating that he made the proposition to appellee to settle the claim for repairs, as above indicated, with reference to whether or not his proposition was accepted, he stated: "No, that was the only proposition that was made and he, seemed to me, had accepted it." He did not state positively that appellee accepted his proposition to settle the claim for repairs. The voucher sent to appellee with which to settle the rental for the month of September, 1919, does not corroborate but contradicts appellant's theory that the claim for repairs was settled. As drawn and sent it was for less than $1,200.00, upon the theory that only a portion of the equipment was used for that month. Correspondence between the parties with reference to the question ensued and appellant eventually mailed to appellee a check for the balance of the $1,250.00, acknowledging the correctness of appellee's contention that the equipment was rented as a unit and not in integral parts. In none of that correspondence was any mention made of the settlement. If the settlement had been made as contended by appellant, the voucher covering the September rental would unquestionably have been for the full amount of $1,250.00. Correspondence between the parties with respect to the claim for repairs and the letters from appellant's agent, admittedly in charge of the matter, written much later than the date on which he claims to have made the settlement, demonstrate that no settlement had been made. With reference to that controversy, on December 15, 1919, Jones wrote a letter to appellee in which he said:

"My agreement with your Mr. P. E. Williams was to turn your outfit back to him in as good condition as when received, less the usual wear and tear. I have no intention of doing anything other than what is right in my agreement with Mr. Williams."

On August 23, 1920, Jones wrote appellee as follows:

"As stated to your Mr. P. E. Williams while in Lexington during the month of February or March, the bill which you handed in to us was for repairs other than those which we were obligated to make to your equipment, under our agreement. Your equipment was to be turned back to you in like condition to what it was when received from you. When you had this equipment overhauled at Knoxville, you included a great many repairs that were necessary at

the time the outfit was secured from you. Instead of receiving the outfit back in condition like unto that it was in when we received it, you had it put, and did receive it back, in very much better condition than it was when turned over to us. In fact, you had these cars put in better shape than new cars would have been in. I so stated to your Mr. P. E. Williams, and told him that I would not pay the bill as handed in, but would only approve a reasonable bill for the overhauling of this equipment. Whenever such bill is forthcoming, I will be glad to approve same, and will place in proper channel for payment.''

And on September 14, 1920, the following was written in a letter from Jones to appellee:

''I cannot see how you arrive at any such figures as set out as being due you. Your Mr. P. E. Williams, as stated to you in mine of August 23d, took this matter up with me, and I stated very frankly to him my stand in the matter. . . . I will not make settlement upon the basis as outlined in your letter of September 11th, nor will I recommend that the company do so. There are so many false items in your statement that I will not attempt to point them out, as you know as well as I do that the bill is in error in each of its items, and is so unreasonable as not to merit serious consideration on the part of either you or myself or any other person having the slightest regard whatever for truth and justice.''

Those letters speak for themselves. They would not have been written by Jones if, as he stated, in September, 1919, he had settled with and paid appellee in full for its claim on account of repairs.

The equipment was shipped to the William J. Oliver Mfg. Company under bill of lading that consigned it to R. W. Jones, appellant's agent, in care of that company. The repairs were made pursuant to an offer by that company to do so on a cost plus basis. P. E. Williams, representing appellee, testified that the offer of the company to repair at cost plus 20% was submitted to R. W. Jones and approved by him, and that the equipment was shipped for repairs by Jones pursuant to his approval of the offer. Jones testified that it was shipped by him pursuant to his agreement to deliver the machinery at any point designated by appellee on the Southern Railway system.

The jury, however, found that no settlement was made as contended by Jones, and the record overwhelmingly sustains the finding of the jury. The cost plus plan of having work performed seems to have been a favorite with the agents of the government during the war period. We can not understand why, with all the machine shops of the railroad system at its disposal, these repairs were not expeditiously made in some of the railroad shops. However, that was not done and the other plan was pursued. There is no question from the evidence but that when the railroad administration ceased using this equipment it needed much repairing to be restored to the condition in which it was when delivered to appellant. It is insisted for appellant that as repaired the equipment was put in much better condition than when delivered to it. The instructions authorized the jury to find for appellees only the reasonable cost of the repairs necessary to put the equipment in the same condition as when received. Under the contract appellee was entitled to rental at the rate of $1,250.00 per month until the equipment was returned to it in as good condition as when received. The repairs were not completed until about May 1, 1920. The verdict found was far short of rental up to that time and the amount paid by appellee for the repairs done. Under the facts it can not be said, as is contended by appellant, that the verdict of the jury is excessive or flagrantly against the evidence.

Appellant insists that the court erroneously, over its objection, permitted appellee to introduce carbon copies of letters written by it to R. W. Jones with respect to the controversy without demand having been made for the production of the originals or their loss accounted for. The evidence discloses that when the letters in question were written a sheet of carbon paper was used and a duplicate of the letter as written was made in that way; that one of the two copies of the letter so written was enclosed in an envelope properly addressed to R. W. Jones, district engineer, C., N. O. & T. P. Ry. Co., Lexington, Kentucky; that the required amount of postage was placed on the envelope and it was mailed by appellee; and that the envelope contained the address of the sender with the usual request that it be returned unless called for within five days, and that it was never returned to appellee. We find that what we commonly call "carbon copies" of letters are, more properly speaking, duplicate

originals. As to their admissibility in evidence, in the absence of a demand for the production of the original, the rule is thus laid down in 10 R. C. L., page 1149:

"According to some decisions, a carbon copy of a letter is not admissible in evidence until the original letter from which it was made has been accounted for; but the better view is that the different numbers or impressions of a writing produced by placing carbon paper between sheets of paper and writing upon the exposed surface are duplicate originals, of which any may be introduced in evidence without accounting for the nonproduction of the others."

22 C. J., page 1024, section 1314, reads:

"Where several copies of a writing are made at the same time by the same mechanical operation, each is regarded as an original and is admissible as such. The most usual application of this rule is found in the case of carbon copies, which are usually admitted as duplicate originals, but a distinction has been drawn with respect to instruments requiring signatures, such as contracts, it being considered that where several carbon copies are made, all the copies are originals until signed, and when one is signed the others become copies with the signatures missing."

The question gets back to the ancient "best evidence" rule. All the decisions rejecting copies of writings in the absence of demand for originals when in the hands of an adversary or of a proper accounting for their loss or destruction were based upon the rule requiring the "best evidence" to be introduced. But with reference to letters written in duplicate or greater number by the use of carbon paper, all are written by the same mechanical act. If the duplicate original made from the carbon paper by the striking of the type should be mailed and that made from the ribbon he retained, the one mailed would certainly be a letter, as much so as the other, if sent, would be. The carbon impressions are not copies but duplicate originals. Hence the distinction between the case here presented and the old cases wherein under the "best evidence" rule copies of writings were excluded. The courts of the country seem to be divided

on the question.  The weight of authority seems to sustain the admission of carbon duplicates of letters without demand for the production of originals.  International Harvester Co. of America v. Elfstrom, 101 Minn. —, 112 N. W. 52, 118 A. S. R. 626, 11 Ann. Cases 107, 12 L. R. A. (N. S.) 343, and note collating authorities; C. & O. Railway Co. v. Stock & Sons, 51 S. E. 161.  An interesting and well reasoned article sustaining the doctrine here announced may be found in the Harvard Law Review, 1905-1906, vol. 19, pp. 123-4.

In the case now before us Jones, admittedly the agent of appellant, who testified after the carbon duplicates of the letters were introduced, did not deny having received them, and some of the letters from him to appellee, introduced in evidence, indicate that they were written in response to the letters, carbon duplicates of which were introduced.  It having been established that the original letters properly addressed with the requisite amount of postage affixed were mailed to appellant, no sufficient reason suggests itself to this court to hold that the duplicate originals commonly but erroneously spoken of as "carbon copies" were not properly admitted as evidence in this case.  In addition it would seem that their introduction was not prejudicial under the facts of this case.  The letters of appellant's agent to appellee were of themselves as much evidence that appellee's version of this controversy is correct and that no settlement was made in September, 1919, between appellant and appellee agreeing upon and settling the amount of the claim for repairs.

Appellant complains that the instructions by which the issues were submitted to the jury were long, involved and confusing, so much so as to render them erroneous.  We find the instructions to be, perhaps, unnecessarily long and somewhat involved.  We find, however, that they were drawn practically in conformity with the pleadings under which the issues were made up and doubtless their length is due to that fact.  We find, however, that the instructions fairly presented the issues, and it does not seem to the court that the jury could have been misled by them to the prejudice of appellant.  Appellant's defense was presented to the jury in an instruction so drawn as not to be misunderstood.  If the instructions as drawn, due to their length, were calculated to be confusing to the jury it was rather to the prejudice

of appellee than of appellant, because the features of the instructions about which the complaint might be made that they were too long and perhaps involved apply only to the instructions submitting appellee's contentions to the jury.

For the reasons indicated, it is held that the trial court properly overruled appellant's motion for a new trial, and the judgment herein is affirmed. .